DIVERSIFIED TELECOM SERVICES, INC., A NEBRASKA CORPORATION, APPELLANT, v. DAVID L. CLEVINGER, JR., AN INDIVIDUAL, ET AL., APPELLEES.

683 N.W.2d 338

Filed July 16, 2004.    No. S-03-808.

Richard L. Rice, of Crosby, Guenzel, L.L.P., for appellant.

Mark A. Fahleson, Brian S. Kruse, and Troy S. Kirk, of Rembolt, Ludtke & Berger, L.L.P., for appellees.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## I. NATURE OF CASE

The primary issue raised by this case is whether personal jurisdiction exists in Nebraska over David L. Clevinger, Jr., and Jerold J. Hawkins, both Michigan residents, and Skyline Services, L.L.C. (Skyline), a Michigan limited liability company (collectively the

appellees). The district court concluded that it did not have personal jurisdiction and sustained the appellees' special appearance. We reverse the order of the district court in part, concluding that Nebraska's jurisdiction extends over Clevinger and Hawkins.

## II. BACKGROUND

Diversified Telecom Services, Inc. (Diversified), filed this action against the appellees on November 1, 2002. Diversified is a Nebraska corporation engaged in the business of construction and site improvement for cellular telephone transmission towers and other communications equipment throughout the United States. Its principal office is located in Waverly, Nebraska. Clevinger and Hawkins were former employees of Diversified who provided project management services to Diversified during their employment. Clevinger was employed with Diversified from November 2001 to October 2002 and was responsible for a region that included Michigan, Indiana, Ohio, and points to the east. Hawkins was employed by Diversified from November 2001 to June 2002, and was responsible for managing sites in Michigan. In February 2002, Clevinger and Hawkins formed Skyline. Diversified alleged that Skyline was formed to also engage in the business of construction and site improvement of transmission towers and communications equipment; in essence, Skyline was to directly compete with Diversified. The petition articulated four causes of action against the appellees: breach of the duty of loyalty, tortious interference, fraud and/or misrepresentation, and conversion.

The appellees filed a special appearance challenging the district court's personal jurisdiction over them. In support of their special appearance, the appellees offered the affidavits of Clevinger and Hawkins. Both affidavits stated that neither Clevinger nor Hawkins played any role in the operations of Skyline until each was terminated by Diversified. The affidavits also stated, in short, that the appellees have never had any contacts with Nebraska, with one exception. Both men admitted that they were in Nebraska on December 3 and 4, 2001, for the purpose of meeting the staff of Diversified.

Diversified offered the affidavit of Amy Grady, a collections specialist and administrative assistant with Diversified. Grady's

affidavit stated that Clevinger and Hawkins were formerly employed by Diversified and, as such, received compensation from Diversified, including rent Clevinger received from Diversified for an office in his Michigan home. The affidavit also contained evidence of the communications that Clevinger and Hawkins had with Diversified's Waverly office. Telephone billing statements included in the record indicate that from November 19, 2001, to July 26, 2002, Clevinger and Hawkins made approximately 326 and 279 telephone calls to Nebraska, respectively. Finally, Grady's affidavit also averred that Clevinger and Hawkins came to Nebraska on December 3 and 4, 2001, to formally accept employment with Diversified, complete paperwork, obtain information regarding their new jobs, and attend meetings with Diversified's personnel.

On May 15, 2003, the district court sustained the appellees' special appearance and dismissed Diversified's petition. On May 22, Diversified filed a motion which stated in full:

> COMES NOW the Plaintiff, Diversified Telecom Services, Inc. and moves this Court pursuant to NEB. REV. STAT. § 25-1142, *et seq.* (Reissue 2000) for an order granting a new trial in this matter. Plaintiff's Motion is directed at a reexamination of this Court's findings and decision in its Order dated May 14, 2003.

> Plaintiff contends the Court's decision is not sustained by sufficient evidence, or is contrary to the law (Neb. Rev. Stat. § 25-1142[6]).

On June 13, 2003, the district court denied Diversified's motion. Diversified filed its notice of appeal on July 9. We later moved the case to our docket.

### III. ASSIGNMENT OF ERROR

Diversified's four assignments of error can be more succinctly restated as one: The district court erred in finding that it had no personal jurisdiction over the appellees and sustaining the appellees' special appearance.

### IV. STANDARD OF REVIEW

When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion

independent from the trial court's. *Quality Pork Internat. v. Rupari Food Servs.*, 267 Neb. 474, 675 N.W.2d 642 (2004). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id.*

## V. ANALYSIS

### 1. APPELLATE JURISDICTION

■ We begin by addressing the appellees' argument that this court does not have jurisdiction over Diversified's appeal. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Central Neb. Pub. Power v. Jeffrey Lake Dev.*, 267 Neb. 997, 679 N.W.2d 235 (2004). The appellees characterize Diversified's May 22, 2003, motion as a motion for new trial, as it was titled, and then argue that the hearing on the appellees' special appearance was not a "trial" from which a motion for new trial could be filed. See Neb. Rev. Stat. § 25-1142 (Cum. Supp. 2002) (providing in part that "[a] new trial is a reexamination in the same court of an issue of fact after a verdict by a jury, report of a referee, or a trial and decision by the court"). Thus, the appellees conclude that Diversified's notice of appeal was not timely filed because the May 22 motion did not terminate the 30-day appeal period after the district court sustained the appellees' special appearance.

■ Whether a motion for new trial is a proper motion to file after a defendant's special appearance is sustained is an issue we need not address because the appellees' initial premise—that the May 22, 2003, motion is a motion for new trial—is one we need not accept. A postjudgment motion must be reviewed based on the relief sought by the motion, not based on the title of the motion. *Central Neb. Pub. Power v. Jeffrey Lake Dev., supra.* The running of the time for filing a notice of appeal is not only terminated by a motion for new trial, but also by a motion to alter or amend a judgment under Neb. Rev. Stat. § 25-1329 (Cum. Supp. 2002). *Central Neb. Pub. Power v. Jeffrey Lake Dev., supra.* To qualify for treatment as a motion to alter or amend a judgment, a motion must be filed no later than 10 days after the entry of judgment, as required under § 25-1329, and must seek substantive alteration of

the judgment. *Central Neb. Pub. Power v. Jeffrey Lake Dev., supra*; *State v. Bellamy*, 264 Neb. 784, 652 N.W.2d 86 (2002). Diversified's May 22 motion, remarkably similar to the motion at issue in *Central Neb. Pub. Power v. Jeffrey Lake Dev.*, requested a "reexamination" of the district court's May 15 decision on the basis that it was contrary to law. Therefore, the motion sought substantive alteration of the judgment and can be characterized as a motion to alter or amend a judgment, which terminated the 30-day appeal period. See *id.* Diversified's notice of appeal was filed within 30 days of the overruling of its motion to alter or amend a judgment; thus, its notice of appeal was timely and we have jurisdiction over this matter.

## 2. PERSONAL JURISDICTION

Personal jurisdiction is the power of a tribunal to subject and bind a particular entity to its decisions. *Quality Pork Internat. v. Rupari Food Servs.*, 267 Neb. 474, 675 N.W.2d 642 (2004). Under the statutory pleading rules in effect when this action was filed, before filing any other pleading or motion, one may file a special appearance for the sole purpose of objecting to a court's assertion or exercise of personal jurisdiction over the objector. *Id.* Confronted with a special appearance, a plaintiff has the burden to establish facts which demonstrate the court's personal jurisdiction over the defendant. *Id.* In a hearing on a special appearance, an affidavit may be used to prove or disprove the factual basis for a court's assertion or exercise of personal jurisdiction over a defendant. *Id.* When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court's. *Id.*

We digress for a moment to note that during oral arguments before this court, Diversified conceded that the district court correctly concluded that no personal jurisdiction exists over Skyline. Thus, our analysis below deals only with the issue of whether Nebraska's assertion of jurisdiction extends over Clevinger and Hawkins.

Addressing that issue first requires us to determine what evidence we may consider. As noted, Diversified had the burden to establish facts demonstrating the court's personal jurisdiction

over the appellees. To satisfy that burden, Diversified offered into evidence the affidavit of Grady. The appellees objected to the offer. The district court stated that it would reserve ruling on the objection, and the hearing on the appellees' special appearance promptly concluded. Thus, the court never expressly received the affidavit into evidence, although the court did refer to it in its order sustaining the appellees' special appearance.

The appellees argue that Grady's affidavit may not be considered on appeal because " '[u]nless the [exhibit] is marked, offered, **and** accepted, it does not become part of the record and cannot be considered . . . as evidence in the case.' " Brief for appellees at 29, quoting *Zannini v. Ameritrade Holding Corp.*, 266 Neb. 492, 667 N.W.2d 222 (2003). Diversified counters the appellees' argument with a quotation from *R.W. v. Schrein*, 264 Neb. 818, 821, 652 N.W.2d 574, 578 (2002) (supplemental opinion), where we stated:

> " ' "If when inadmissible evidence is offered the party against whom such evidence is offered consents to its introduction, or fails to object, *or to insist upon a ruling on an objection to the introduction of the evidence*, and otherwise fails to raise the question as to its admissibility, he is considered to have waived whatever objection he may have had thereto, *and the evidence is in the record for consideration the same as other evidence.*" ' "

(Emphasis in original.)

Diversified argues that the appellees waived any objection to Grady's affidavit when they failed to insist upon a ruling on their objection. See *id.* (it is well established that a party who fails to insist upon a ruling to a proffered objection waives that objection). Although we did not consider the exhibit at issue in *R.W. v. Schrein, supra*, because we could not determine whether it had been received into evidence, we cautioned parties that when they fail to insist upon rulings to their objections, they do so at their own peril. Having been forewarned, the appellees in this case did not insist upon a ruling to their objections. Those objections are therefore waived, and Grady's affidavit is available to us as we consider whether personal jurisdiction exists over Clevinger and Hawkins.

██ Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 1995), extends Nebraska's jurisdiction over nonresidents having any contact with or maintaining any relation to this state as far as the U.S. Constitution permits. See § 25-536(2); *Quality Pork Internat. v. Rupari Food Servs.*, 267 Neb. 474, 675 N.W.2d 642 (2004). Thus, we need only consider whether Nebraska's exercise of jurisdiction over the appellees would be consistent with due process.

██ The Due Process Clause of the U.S. Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he or she has established no meaningful contacts, ties, or relations. *Kugler Co. v. Growth Products Ltd.*, 265 Neb. 505, 658 N.W.2d 40 (2003). To subject an out-of-state defendant to personal jurisdiction in a forum court, due process requires that the defendant have certain minimum contacts with the forum state so as not to offend " 'traditional notions of fair play and substantial justice.' " *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945); *Kugler Co. v. Growth Products Ltd., supra*. Thus, the determination whether the court has jurisdiction is a two-step process. First, we must determine whether the appellees had the necessary minimum contacts with Nebraska, and second, if such minimum contacts have been established, the contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. See *Kugler Co. v. Growth Products Ltd., supra*.

(a) Minimum Contacts

██ The benchmark for determining if the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there. *Quality Pork Internat. v. Rupari Food Servs., supra*. This analysis requires that we consider the quality and nature of the defendant's activities in order to ascertain whether the defendant has the necessary minimum contacts with the forum to satisfy due process. *Kugler Co. v. Growth Products Ltd., supra*.

Under such an analysis, the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. *Id.* Rather, it is essential in each case that there be some act by which the defendant purposely avails himself or herself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Id.* This requirement ensures that a defendant will not be subject to litigation in a jurisdiction solely due to random, fortuitous, or attenuated contacts. *Id.*

The scope of Clevinger's and Hawkins' contacts with Nebraska is predicated on several facts established by Grady's affidavit. Each was employed by Diversified, a Nebraska corporation—Clevinger for approximately 11 months and Hawkins for approximately 7 months. By virtue of the employment relationship, Clevinger and Hawkins provided management services to Diversified and were compensated for those services. More importantly, Clevinger and Hawkins came to Nebraska on December 3 and 4, 2001, to meet Diversified's staff and also made hundreds of telephone calls to Nebraska from November 2001 to July 2002.

Whether a forum state court has personal jurisdiction over a nonresident defendant depends on whether the defendant's contacts with the forum state are the result of unilateral acts performed by someone other than the defendant, or whether the defendant himself or herself has acted in a manner which creates substantial connections with the forum state, resulting in the defendant's purposeful availment of the benefits and protections of the law of the forum state. *Quality Pork Internat. v. Rupari Food Servs.*, 267 Neb. 474, 675 N.W.2d 642 (2004). Clevinger and Hawkins argue that their December 2001 visit to Nebraska and their hundreds of telephone calls with Nebraska were requirements of their employment and that, therefore, they were merely responding to Diversified's unilateral acts. We do not agree. The employment relationship between Diversified and Clevinger and Hawkins by definition includes various *mutual*, rather than unilateral, promises and obligations. While such an employment relationship might not, by itself, provide the necessary contacts for personal jurisdiction in this state, our

record also contains evidence of Clevinger's physical presence in Nebraska and the hundreds of telephone calls they made here. The U.S. Supreme Court has stated that "territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). In addition, this court has stated that mail and telephone communications sent by a defendant into a forum may count toward the minimum contacts that support jurisdiction. *Crete Carrier Corp. v. Red Food Stores*, 254 Neb. 323, 576 N.W.2d 760 (1998). Considering all of the facts before us, we conclude that Clevinger and Hawkins have sufficient minimum contacts with Nebraska that they should reasonably anticipate being haled into court here.

(b) Fair Play and Substantial Justice

Once it has been decided that a defendant purposefully established minimum contacts within the forum state, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with " 'fair play and substantial justice.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. at 476; *Quality Pork Internat. v. Rupari Food Servs., supra*. These considerations include (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King Corp. v. Rudzewicz, supra*; *Quality Pork Internat. v. Rupari Food Servs., supra*. Such considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. See, *Burger King Corp. v. Rudzewicz, supra*; *Quality Pork Internat. v. Rupari Food Servs., supra*.

Where a defendant who has purposefully directed his or her activities at forum residents seeks to defeat jurisdiction, the defendant must present a compelling case that the presence of some other consideration would render jurisdiction unreasonable. *Quality Pork Internat. v. Rupari Food Servs.*, 267 Neb. 474,

675 N.W.2d 642 (2004). We conclude that Clevinger and Hawkins have failed to present such a case in light of the above considerations. With the ease of modern transportation and communications, it is difficult to see the burden on Clevinger and Hawkins of defending this action in a state where they have had contacts and whose laws they have availed themselves of. See *Kugler Co. v. Growth Products Ltd.*, 265 Neb. 505, 658 N.W.2d 40 (2003). In their brief, Clevinger and Hawkins speculate that many of the witnesses that will testify are located in Michigan and also argue that the business Diversified has conducted in Michigan in the past evidences a minimal burden on it to litigate the action in Michigan. However, Nebraska also has a significant interest in adjudicating a suit brought by a Nebraska corporation based on actions by defendants who have availed themselves of the benefits and protections of the laws of Nebraska. In short, Nebraska's exercise of jurisdiction over Clevinger and Hawkins would not offend notions of fair play and substantial justice.

## VI. CONCLUSION

This court has jurisdiction over the matter before it because Diversified's May 22, 2003, motion to alter or amend a judgment terminated the appeal period and Diversified's notice of appeal was timely filed following that motion's denial. With regard to the issue of personal jurisdiction over the appellees, Diversified has conceded that no such jurisdiction extends over Skyline, and that portion of the district court's order is affirmed. However, we conclude that Nebraska's exercise of jurisdiction extends over Clevinger and Hawkins. Thus, we reverse the district court's order sustaining the special appearance in part and remand the cause for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

WRIGHT, J., participating on briefs.