S.L., A MINOR, BY HER NEXT FRIEND, GUARDIAN AND MOTHER,
SUSAN L., APPELLANT, V.
STEVEN L., APPELLEE.
742 N.W.2d 734

Filed December 14, 2007. No. S-06-563.

Joel Bacon, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., and Richard Ducote for appellant.

Elise Meerkatz and Christopher A. Furches, of Johnson, Flodman, Guenzel & Widger, for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

In *Susan L. v. Steven L.*,[1] we held that pursuant to the Uniform Custody Jurisdiction and Enforcement Act, Neb. Rev. Stat. §§ 43-1226 to 43-1266 (Reissue 2004), Canadian courts had exclusive continuing jurisdiction over a custody dispute between Steven L., a resident and citizen of Canada, and Susan L., who resides with the parties' minor daughter, S.L., in Nebraska. The same parties are before us in this appeal from the dismissal of an intentional tort action filed in the district court for Lancaster County by Susan, on S.L.'s behalf, against Steven. Susan alleged that on multiple occasions, Steven transported S.L. from Nebraska to Canada for court-ordered visitation, during which visitation he intentionally abused her, and that such abuse resulted in injuries for which S.L. is entitled to recover compensatory damages. The question presented in this appeal is whether the district court erred in dismissing the action on the ground that it lacked personal jurisdiction over Steven.

## BACKGROUND

### PARTIES

S.L. was born in Canada on March 19, 1998, to Susan and Steven, who both resided in Canada at the time. On October 18, 2000, the Supreme Court of British Columbia, Vancouver, Canada, issued an "Interim Order" awarding custody of S.L.

---

[1] *Susan L. v. Steven L.*, 273 Neb. 24, 729 N.W.2d 35 (2007).

to Susan and providing parenting time to Steven. The order contemplated that Susan and S.L. would relocate to Nebraska, which they did in October 2000. S.L. has resided in Nebraska since moving here with Susan, except for visits with Steven in Canada for the court-ordered parenting time.

Steven is a permanent resident of British Columbia and has never resided, owned property, or conducted any type of business in Nebraska. Since October 2000, he has traveled to Nebraska 12 to 14 times to pick up S.L. and transport her to British Columbia for court-ordered parenting time. In November 2004, a British Columbia court entered an order preventing Steven from transporting S.L., but the court did not suspend his visitation rights. After that order was entered, Steven's mother traveled to Nebraska to transport S.L. to British Columbia for two visits with Steven. The British Columbia court retains jurisdiction in the ongoing custody and visitation dispute between Susan and Steven.

### DISTRICT COURT PROCEEDINGS

Acting as the next friend, guardian, and mother of S.L., Susan commenced this action against Steven in the district court for Lancaster County. In the complaint, Susan alleged that Steven committed repeated acts of battery and sexual abuse against S.L. during five visits in British Columbia from 2003 through 2005. Susan further alleged that in an effort to coerce silence or recantation, Steven withheld food from S.L. for long periods of time and threatened to prevent any future contact with Susan and other family members.

The complaint was served on Steven in British Columbia. In response, he filed a motion to dismiss pursuant to Neb. Ct. R. of Pldg. in Civ. Actions 12(b)(2) (rev. 2003) on the ground that the Nebraska court lacked jurisdiction over his person. The motion was submitted on the pleadings, as well as affidavits and exhibits submitted by the parties and received by the court. No oral testimony was heard.

The district court determined that it did not have personal jurisdiction over Steven and granted his motion to dismiss. The court noted that Steven's limited contacts with Nebraska for the purposes of transporting S.L. for court-ordered visitation were

insufficient to subject him to the jurisdiction of Nebraska courts. The court also found that Canada, not Nebraska, was the focal point of the harm alleged and that there was no showing Steven foresaw or reasonably should have foreseen that his alleged conduct in Canada would have any effect in Nebraska. Susan moved to alter or amend the order of dismissal, which was denied by the district court. Susan then filed this timely appeal, and we granted her petition to bypass.[2]

## ASSIGNMENTS OF ERROR

Susan assigns that the district court erred (1) in concluding that Nebraska lacked personal jurisdiction over Steven and (2) in failing to give S.L. the benefit of all reasonable inferences deducible from the pleadings and affidavits.

## STANDARD OF REVIEW

When a jurisdictional question does not involve a factual dispute, the issue is a matter of law. An appellate court reviews questions of law independently of the lower court's conclusion.[3] When reviewing an order dismissing a party from a case for lack of personal jurisdiction under rule 12(b)(2), an appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo.[4] An appellate court reviews a lower court's determination regarding personal jurisdiction based on written submissions in the light most favorable to the nonmoving party.[5] If the lower court does not hold a hearing and instead relies on the pleadings and affidavits, then an appellate court must look at the facts in

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

[3] *Erickson v. U-Haul Internat., ante* p. 236, 738 N.W.2d 453 (2007); *Brunkhardt v. Mountain West Farm Bureau Mut. Ins.*, 269 Neb. 222, 691 N.W.2d 147 (2005).

[4] *Ameritas Invest. Corp. v. McKinney*, 269 Neb. 564, 694 N.W.2d 191 (2005). See, *Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690 (8th Cir. 2003); *Epps v. Stewart Information Services Corp.*, 327 F.3d 642 (8th Cir. 2003).

[5] *Ameritas Invest. Corp. v. McKinney, supra* note 4. See *Stanton v. St. Jude Medical, Inc., supra* note 4.

the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.[6]

## ANALYSIS

 Personal jurisdiction is the power of a tribunal to subject and bind a particular entity to its decisions.[7] Before a court can exercise personal jurisdiction over a nonresident defendant, the court must determine, first, whether the long-arm statute is satisfied and, if the long-arm statute is satisfied, second, whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process.[8]

### LONG-ARM STATUTE

 Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 1995), extends Nebraska's jurisdiction over nonresidents having any contact with or maintaining any relation to this state as far as the U.S. Constitution permits.[9] Thus, we need only consider whether a Nebraska court's exercise of jurisdiction over Steven would be consistent with due process.

### MINIMUM CONTACTS

 In analyzing personal jurisdiction, we consider the quality and type of the defendant's activities to decide whether the defendant has the necessary minimum contacts with the forum state to satisfy due process.[10] In this context, due process requires that a defendant's minimum contacts with the forum state be such that "'maintenance of the suit does not offend

---

[6] *Ameritas Invest. Corp. v. McKinney, supra* note 4. See *Epps v. Stewart Information Services Corp., supra* note 4.

[7] *In re Petition of SID No. 1,* 270 Neb. 856, 708 N.W.2d 809 (2006); *Diversified Telecom Servs. v. Clevinger,* 268 Neb. 388, 683 N.W.2d 338 (2004).

[8] *Brunkhardt v. Mountain West Farm Bureau Mut. Ins., supra* note 3.

[9] *Erickson v. U-Haul Internat., supra* note 3; *Brunkhardt v. Mountain West Farm Bureau Mut. Ins., supra* note 3.

[10] *Erickson v. U-Haul Internat., supra* note 3.

"traditional notions of fair play and substantial justice." "[11] Two types of personal jurisdiction may be exercised depending upon the facts and circumstances of the case: general personal jurisdiction or specific personal jurisdiction.[12] In the exercise of general personal jurisdiction, the plaintiff's claim does not have to arise directly out of the defendant's contacts with the forum state, if the defendant has engaged in " " "continuous and systematic general business contacts" " " with the forum state.[13] If the defendant's contacts are neither substantial nor continuous and systematic, but the cause of action arises out of or is related to the defendant's contact with the forum, a court may assert specific jurisdiction over the defendant, depending on the quality and nature of such contact.[14] In this case, there is no allegation that Steven had substantial, continuous, or systematic contacts with Nebraska. Rather, Susan alleged that Steven came into the state on several occasions for the specific purpose of transporting S.L. to Canada for court-ordered visitation, during which visitation he committed intentional acts of abuse. We must determine whether these specific acts by Steven establish the necessary minimum contacts which would permit a Nebraska court to exercise jurisdiction over his person without violating his right to due process.[15]

The benchmark for determining whether the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled

---

[11] *Quality Pork Internat. v. Rupari Food Servs.*, 267 Neb. 474, 481, 675 N.W.2d 642, 649 (2004), quoting *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

[12] *Brunkhardt v. Mountain West Farm Bureau Mut. Ins.*, *supra* note 3.

[13] *Brunkhardt v. Mountain West Farm Bureau Mut. Ins.*, *supra* note 3, 269 Neb. at 226, 691 N.W.2d at 152, quoting *Quality Pork Internat. v. Rupari Food Servs.*, *supra* note 11. Accord *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

[14] *Brunkhardt v. Mountain West Farm Bureau Mut. Ins.*, *supra* note 3; *Quality Pork Internat. v. Rupari Food Servs.*, *supra* note 11.

[15] See, *Brunkhardt v. Mountain West Farm Bureau Mut. Ins.*, *supra* note 3; *Diversified Telecom Servs. v. Clevinger, supra* note 7.

into court there.[16] Whether a forum state court has personal jurisdiction over a nonresident defendant depends on whether the defendant has acted in a manner which creates substantial connections with the forum state, resulting in the defendant's purposeful availment of the benefits and protections of the law of the forum state.[17] The "'purposeful availment'" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'"[18] "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State."[19]

Applying the principle that personal jurisdiction cannot be premised on the unilateral activity of another, several courts have held that a noncustodial parent's exercise of visitation rights or other routine communication with children in a state to which the custodial parent has relocated is not a sufficient contact with that state to subject the noncustodial parent to the jurisdiction of its courts. For example, in *Miller v. Kite*,[20] the custodial parent moved to North Carolina after the parties' divorce and commenced an action there to modify a child support award. The noncustodial parent, who was domiciled in California and resided in Japan, had never resided in North Carolina. The North Carolina Supreme Court held that neither the child's presence in that state nor the noncustodial parent's periodic exercise of his visitation rights and mailing of child support payments there provided the constitutionally required minimum contacts to justify in personam jurisdiction over the noncustodial parent. The court noted that the child's presence

---

[16] *Ameritas Invest. Corp. v. McKinney, supra* note 4; *Brunkhardt v. Mountain West Farm Bureau Mut. Ins., supra* note 3.

[17] *Brunkhardt v. Mountain West Farm Bureau Mut. Ins., supra* note 3. See *Diversified Telecom Servs. v. Clevinger, supra* note 7.

[18] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (citations omitted). See, also, *Quality Pork Internat. v. Rupari Food Servs., supra* note 11.

[19] *Burger King Corp. v. Rudzewicz, supra* note 18, 471 U.S. at 475.

[20] *Miller v. Kite*, 313 N.C. 474, 329 S.E.2d 663 (1985).

in North Carolina was solely the result of the custodial parent's decision to reside there and that the visitations were temporary and unrelated to the action. Similarly, in *In re Marriage of Bushelman v. Bushelman*,[21] the Wisconsin Court of Appeals held that a noncustodial parent's acquiescence in his children's residence in Wisconsin with the custodial parent, and his letters, telephone calls, and visits with the children in that state, did not satisfy the minimum contacts requirement which would permit a Wisconsin court to exercise personal jurisdiction over him in a divorce proceeding.

Both *Miller* and *In re Marriage of Bushelman* rely in part on the reasoning of *Kulko v. California Superior Court*.[22] In that case, the parties resided with their children in New York until they separated. Their separation agreement provided that their children would reside with the father in New York during the school year, but would spend vacation periods with the mother, who moved to California. One of the children later expressed a desire to live with her mother in California, and the father acquiesced. The other child moved to California without the father's prior knowledge or acquiescence, and the mother then commenced a proceeding in California to modify custody and support obligations which had been in effect under the separation agreement. In reversing a decision of the California Supreme Court's affirmance of a lower court's finding that it had personal jurisdiction over the father, the U.S. Supreme Court noted that there was no claim that the father had "visited physical injury on either property or persons within the State of California" and that the single act of the father's acquiescence in the stated preference of one of his children to reside in California with her mother afforded "no basis on which it can be said that [the father] could reasonably have anticipated being 'haled before a [California] court.' "[23]

---

[21] *In re Marriage of Bushelman v. Bushelman*, 246 Wis. 2d 317, 629 N.W.2d 795 (Wis. App. 2001).

[22] *Kulko v. California Superior Court*, 436 U.S. 84, 98 S. Ct. 1690, 56 L. Ed. 2d 132 (1978).

[23] *Id.*, 436 U.S. at 96-98, citing and quoting *Shaffer v. Heitner*, 433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977).

In this case, however, Steven's contacts with Nebraska are alleged to involve something much different than the lawful exercise of visitation rights. Susan alleges that during five of these visitations, including three when Steven personally transported S.L. between Nebraska and British Columbia and two when he directed his mother to do so, Steven committed repeated intentional acts of abuse while S.L. was with him in Canada. Although Steven states in his affidavit that the allegations of abuse have been fully investigated in Canada, he does not disclose the results of those investigations, nor does he specifically deny the conduct alleged by Susan. Viewing the allegations of the complaint and the factual statements contained in the parties' affidavits in a light most favorable to Susan in her capacity as next friend, guardian, and mother of S.L., as our standard of review requires, the question is whether a nonresident who repeatedly transports a child residing in Nebraska to another jurisdiction where he commits intentional acts of abuse before returning the child to Nebraska could reasonably expect to be required to defend an intentional tort action brought on the child's behalf in a Nebraska court.

In *Calder v. Jones*,[24] the U.S. Supreme Court addressed an analogous issue involving an intentional tort allegedly committed by residents of one state against a resident of another. In that case, two Florida residents participated in the publication of an article about a California resident, who brought a libel action in California. One of the Florida defendants, a reporter, researched the article through telephone conversations with sources in California and made several business trips to that state. The other Florida defendant, who was the president and editor of the publication, had traveled to California on two occasions, both unrelated to the article in question. Both defendants asserted that as Florida residents, they were not subject to the jurisdiction of the California court in which the libel action was filed. Rejecting their contention, the Court noted that the defendants were "not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly

---

[24] *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).

aimed at California."[25] The Court held that the defendants were "primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis."[26]

Employing slightly different reasoning, the court in *Hughs on Behalf of Praul v. Cole*[27] held that a Minnesota court could exercise personal jurisdiction over a noncustodial parent residing in Pennsylvania who had allegedly abused the child, a Minnesota resident, during summer visitations in Pennsylvania. The noncustodial parent had never resided in or visited Minnesota. The court reasoned that while his contacts with the state were not numerous, they were significant in that they included a continuing relationship with the child and repeated telephone calls to the home in Minnesota where the child resided with his mother. The court further noted that the noncustodial parent could reasonably foresee that consequences from the abuse could arise in Minnesota, which had a strong interest in enabling the custodial parent's efforts to protect her child from abuse by seeking a protective order against the noncustodial parent.

Based upon Susan's allegations and affidavit, which we must accept as true for purposes of the jurisdictional issue before us, we conclude that Steven's contacts with Nebraska are sufficient to subject him to specific personal jurisdiction of a Nebraska court. The record supports an inference that Steven's undisputed travels to Nebraska for the purpose of transporting S.L. to and from British Columbia were an integral part of the intentional abuse alleged by Susan to have occurred there. As such, Steven's presence in Nebraska would not be random, fortuitous, or attenuated, but, rather, would constitute a means to facilitate intentional harm inflicted upon a Nebraska resident after she was physically removed from the state and before she was returned. An intent to inflict injury can be inferred as a matter of law in cases of sexual abuse,[28] and thus, any abuse

[25] *Id.*, 465 U.S. at 789.

[26] *Id.*, 465 U.S. at 790.

[27] *Hughs on Behalf of Praul v. Cole*, 572 N.W.2d 747 (Minn. App. 1997).

[28] *State Farm Fire & Cas. Co. v. van Gorder*, 235 Neb. 355, 455 N.W.2d 543 (1990).

inflicted upon S.L. in Canada would have foreseeable conse-
quences on the child when she was returned to Nebraska. There
are also allegations that during at least some of the visitations,
Steven made threats intended to prevent S.L. from reporting
the abuse to Susan and Nebraska authorities. It is not simply
Steven's presence in Nebraska to exercise visitation rights with
a Nebraska resident, but, rather, the alleged intentional misuse
of such rights as a means of inflicting intentional harm upon
S.L., as alleged by Susan, which constitutes the "substan-
tial connection" between Steven and Nebraska. Due process
requires that individuals have "'fair warning'" that their con-
duct may subject them to the jurisdiction of a state in which
they do not reside.[29]

> Where a forum seeks to assert specific jurisdiction
> over an out-of-state defendant who has not consented to
> suit there, this "fair warning" requirement is satisfied if
> the defendant has "purposefully directed" his activities
> at residents of the forum . . . and the litigation results
> from alleged injuries that "arise out of or relate to"
> those activities.[30]

We conclude that one who removes a minor child from her
Nebraska home under the guise of exercising a visitation right in
another jurisdiction, and then intentionally subjects the child to
harm before returning her to this state, could reasonably expect
to be haled into a Nebraska court to answer for such conduct in
a civil action brought on behalf of the child.

### FAIR PLAY AND SUBSTANTIAL JUSTICE

Once it has been decided that a defendant purpose-
fully established minimum contacts within the forum state,
these contacts may be considered in light of other factors to
determine whether the assertion of personal jurisdiction would

---

[29] See, *Burger King Corp. v. Rudzewicz, supra* note 18, 471 U.S. at 472.
Accord, *Shaffer v. Heitner, supra* note 23 (Stevens, J., concurring in judg-
ment); *Quality Pork Internat. v. Rupari Food Servs., supra* note 11.

[30] *Burger King Corp. v. Rudzewicz, supra* note 18, 471 U.S. at 472 (citations
omitted).

comport with fair play and substantial justice.[31] These considerations include (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.[32] Such considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required.[33]

The fact that Steven is a resident of Canada is an important factor to be considered in this analysis. The U.S. Supreme Court has stated that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."[34]

However, the record reflects that Steven has previously participated in Nebraska legal proceedings involving S.L. by requesting the district court for Lancaster County to enforce certain orders entered by a Canadian court. Traveling from his home in Canada to Nebraska for court proceedings should be no more burdensome to Steven than the same journey to exercise visitation rights. Although Steven claims that there are witnesses in Canada upon whose testimony he would rely, there is no showing that he could not preserve their testimony for presentation in a Nebraska court. The record reflects that one such witness, Steven's mother, has previously testified

---

[31] *Burger King Corp. v. Rudzewicz, supra* note 18; *Internat. Shoe Co. v. Washington, supra* note 11; *Diversified Telecom Servs. v. Clevinger, supra* note 7.

[32] *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987); *Burger King Corp. v. Rudzewicz, supra* note 18; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980); *Diversified Telecom Servs. v. Clevinger, supra* note 7.

[33] See, *Burger King Corp. v. Rudzewicz, supra* note 18; *Diversified Telecom Servs. v. Clevinger, supra* note 7.

[34] *Asahi Metal Industry Co. v. Superior Court, supra* note 32, 480 U.S. at 114.

on his behalf in a Nebraska proceeding involving S.L. Other witnesses, including law enforcement personnel and medical professionals who would testify on behalf of S.L., are located in Nebraska.

■ Nebraska has a significant interest in adjudicating the dispute, inasmuch as a state "generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."[35] And the interest of the minor child in obtaining convenient and effective relief is better served in Nebraska, where she resides, than in Canada. Although Canada has an interest in a fair and efficient resolution of the controversy, its interest does not outweigh that of Nebraska.

Considering all relevant factors, we conclude that Nebraska's exercise of specific personal jurisdiction over Steven in this action would not offend notions of fair play and substantial justice.

## CONCLUSION

Based upon our independent review of the complaint and affidavits, viewed in a light most favorable to Susan in her representative capacity as the next friend, guardian, and mother of S.L., we conclude that the district court for Lancaster County has specific personal jurisdiction over Steven and that it erred in granting his motion to dismiss. Accordingly, we reverse the order of dismissal and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

---

[35] *Burger King Corp. v. Rudzewicz, supra* note 18, 471 U.S. at 473.