which may have prevented this accident. But because it retains sovereign immunity with respect to such discretionary functions, it cannot be held legally liable for its inaction. For these reasons, we affirm the judgment of the district court.

Affirmed.

Heavican, C.J., not participating.

———————————

RFD-TV, LLC, appellant, v. WildOpenWest
Finance, LLC, doing business as Wow! Cable,
and Knology, Inc., appellees.

___ N.W.2d ___

Filed June 13, 2014.    No. S-13-581.

1. **Motions to Dismiss: Jurisdiction: Pleadings: Evidence.** When a trial court relies solely on pleadings and supporting affidavits in ruling on a motion to dismiss for want of personal jurisdiction, the plaintiff need only make a prima facie showing of jurisdiction to survive the motion. However, if the court holds an evidentiary hearing on the issue or decides the matter after trial, then the plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence.

2. **Jurisdiction: Appeal and Error.** An appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo.

3. **Motions to Dismiss: Appeal and Error.** In reviewing the grant of a motion to dismiss, an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.

4. **Judgments: Appeal and Error.** An appellate court determines questions of law independently of the determination reached by the lower court.

5. **Courts: Jurisdiction: Pleadings: Affidavits.** A trial court may elect to decide the issue of personal jurisdiction before trial, or it may defer the matter until trial. A trial court also has discretion in electing whether to decide a matter based on pleadings and affidavits, or conduct a hearing and receive evidence.

6. **Summary Judgment: Motions to Dismiss: Proof.** If a motion to dismiss is treated as one for summary judgment, then the movant carries the burden of showing that there is no genuine issue as to any material fact.

7. **Summary Judgment: Motions to Dismiss: Jurisdiction: Affidavits.** When the issue on a motion to dismiss is personal jurisdiction, affidavits may be submitted without converting the motion into one for summary judgment.

8. **Jurisdiction: Words and Phrases.** Personal jurisdiction is the power of a tribunal to subject and bind a particular entity to its decisions.

9. **Due Process: Jurisdiction: States.** Before a court can exercise personal jurisdiction over a nonresident defendant, the court must determine, first, whether



the long-arm statute is satisfied and, if the long-arm statute is satisfied, second, whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process.

10. ____: ____: ____. When a state construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the Due Process Clause, the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process.

11. ____: ____: ____. Due process for personal jurisdiction over a nonresident defendant requires that the plaintiff allege specific acts by the defendant which establish that the defendant had the necessary minimum contacts before a Nebraska court can exercise jurisdiction over a person.

12. **Jurisdiction: States.** When considering the issue of personal jurisdiction, it is essential in each case that there be some act by which the defendant purposely avails himself or herself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

13. **Due Process: Jurisdiction: States.** The benchmark for determining whether the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there.

14. **States: Parties: Statutes.** Parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.

Appeal from the District Court for Douglas County: J. Michael Coffey, Judge. Affirmed as modified.

Steven D. Davidson and Krista M. Eckhoff, of Baird Holm, L.L.P., for appellant.

Megan S. Wright, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., and Vince M. Roche, of Davenport, Evans, Hurwitz & Smith, L.L.P., for appellees.

Heavican, C.J., Stephan, McCormack, and Cassel, JJ., and Inbody, Chief Judge.

Heavican, C.J.

## I. INTRODUCTION

RFD-TV, LLC (RFD), filed a complaint against WildOpenWest Finance, LLC, doing business as WOW! Cable (WOW), and Knology, Inc., for breach of contract related to the termination of a cable television affiliation agreement. The defendants moved to dismiss the complaint for lack

of personal jurisdiction. After a hearing, the district court dismissed the case with prejudice. RFD appeals. We affirm as modified.

## II. BACKGROUND

Appellant, RFD, is a television programming service focused on the interests of rural and agricultural counties. RFD is a Delaware limited liability company that claims Omaha, Nebraska, as its principal place of business. Knology and WOW are cable television providers operating in several locations, including Kansas and South Dakota. Knology is a Delaware corporation with its principal place of business in Georgia. WOW is a Delaware limited liability company with its principal place of business in Colorado. Neither Knology nor WOW has subscribers in the State of Nebraska, and neither company maintains a physical presence in Nebraska.

On December 14, 2009, RFD executed an affiliation agreement (Sunflower Agreement) with The World Company, doing business as Sunflower Broadband Corporation (Sunflower). The Sunflower Agreement granted Sunflower a nonexclusive right and license to distribute RFD programming to Sunflower's subscribers in Lawrence, Kansas, in exchange for a monthly per-subscriber license fee. The Sunflower Agreement was for an initial term of 5 years, expiring on December 13, 2014. The Sunflower Agreement provides that it "shall be governed by, construed, and enforced in accordance with the laws of the State of Nebraska" and states that "[a]ny dispute arising in or relating to this Agreement shall be resolved by binding arbitration in Omaha, Douglas County, Nebraska . . . ." Knology purchased Sunflower's assets in August 2010. Prior to acquiring Sunflower, Knology was providing cable service to subscribers in Sioux Falls and Rapid City, South Dakota.

In June 2012, Knology became a wholly owned subsidiary of WOW. In October, Knology and WOW informed RFD that as of December 1, 2012, they no longer intended to provide RFD programming to their subscribers. Knology and WOW ceased distribution of RFD programming and did not pay fees to RFD in December 2012.

On December 28, 2012, RFD filed a complaint alleging that Knology had ratified and adopted the Sunflower Agreement by distributing RFD programming to its subscribers in both Kansas and South Dakota and paying RFD the monthly fee according to the pricing structure provided in the Sunflower Agreement. In its complaint, RFD alleges Knology breached the Sunflower Agreement when it stopped making monthly fee payments to RFD before the contract expired.

Knology and WOW (hereinafter collectively appellees) filed a motion to dismiss under Neb. Ct. R. Pldg. § 6-1112(b)(2), alleging that the district court did not have personal jurisdiction over them and alternatively asking for a declaration regarding arbitration. The district court held a hearing on the motion. There was no oral testimony at the hearing, but the court received evidence in the form of an affidavit from each party.

Appellees offered into evidence an affidavit from Peter Smith, senior vice president of programming and advertising sales for WOW. In Smith's affidavit, he points out that RFD's production facilities and network operations are located in Nashville, Tennessee, and that the signal for RFD-TV is uploaded from Nashville. Smith also notes that under Knology's asset purchase agreement with Sunflower, Knology assumed only certain, specified contracts between Sunflower and programmers like RFD and that the Sunflower Agreement was not one of the contracts assumed by Knology.

Attempting to refute RFD's claim that Knology assumed the Sunflower contract by performing under its terms, Smith states that Knology is a member of the National Cable Television Cooperative, Inc. (NCTC), which acquires programming rights from cable networks on behalf of its members. On December 9, 2002, NCTC entered into an agreement with RFD Communications, Inc., allowing NCTC members to distribute RFD's programming. The NCTC agreement expired at the end of 2007. However, after the NCTC agreement expired, Knology continued to provide RFD services to its subscribers in South Dakota, paying fees to RFD on a month-to-month basis.

According to Smith, after Knology acquired Sunflower in 2010, it provided RFD programming to its subscribers in both Kansas and South Dakota under the continuing month-to-month arrangements originating from the NCTC agreement. Knology claims it paid RFD the same rate of $0.154 per subscriber both prior to and after acquiring Sunflower and adding the Kansas market, suggesting that Knology's actions were unaffected by the terms of the Sunflower Agreement. Smith notes that representatives from RFD tried to convince Knology to sign an affiliation agreement in 2011 and 2012, but Knology never signed such an agreement.

Smith asserts that no one from Knology or WOW has ever traveled to Nebraska to meet with RFD representatives regarding its services. According to Smith, appellees' contacts with RFD have been limited to sending licensing fees to RFD monthly and occasionally communicating remotely with RFD employees.

After the court received Smith's affidavit into evidence, RFD submitted the affidavit of Patrick Gottsch, founder and president of RFD, in opposition to the motion to dismiss. Gottsch states that RFD's corporate headquarters and business records are located in Nebraska and that program content decisions for RFD's Nashville production studios are made from Omaha. Gottsch also asserts that Knology paid a lower fee of $0.10 per subscriber under the NCTC agreement and that only after acquiring Sunflower did it begin paying RFD $0.154 per subscriber—a rate Gottsch asserts was calculated under the terms of the Sunflower Agreement. Gottsch asserts that Knology would not have been authorized to distribute RFD programming had the Sunflower Agreement not been assumed and ratified by Knology. Gottsch also notes that the NCTC agreement was with RFD Communications, Inc., which Gottsch suggests was a separate nonprofit entity that ceased doing business in January 2007.

After the hearing, the district court issued a brief order finding the minimum contacts requirement between appellees, as nonresident defendants, and the state had not been met and dismissing the complaint with prejudice.

## III. ASSIGNMENTS OF ERROR

RFD assigns, restated, the following errors of the district court: (1) granting the motion to dismiss and, alternatively, (2) dismissing the case with prejudice.

## IV. STANDARD OF REVIEW

[1] When a trial court relies solely on pleadings and supporting affidavits in ruling on a motion to dismiss for want of personal jurisdiction, the plaintiff need only make a prima facie showing of jurisdiction to survive the motion.[1] However, if the court holds an evidentiary hearing on the issue or decides the matter after trial, then the plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence.[2]

[2,3] An appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo.[3] In reviewing the grant of a motion to dismiss, an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.[4]

[4] An appellate court determines questions of law independently of the determination reached by the lower court.[5]

## V. ANALYSIS

### 1. Standard of Review

[5] A trial court may elect to decide the issue of personal jurisdiction before trial, or it may defer the matter until trial. A trial court also has discretion in electing whether to decide a matter based on pleadings and affidavits, or conduct a hearing and receive evidence. The plaintiff's burden of proof and

---

[1] See *Ameritas Invest. Corp. v. McKinney*, 269 Neb. 564, 694 N.W.2d 191 (2005).

[2] See *id*.

[3] See *S.L. v. Steven L.*, 274 Neb. 646, 742 N.W.2d 734 (2007).

[4] See *McKinney, supra* note 1.

[5] *Ashby v. State*, 279 Neb. 509, 779 N.W.2d 343 (2010).

our standard of review on appeal depend on how the motion to dismiss was dealt with by the trial court.[6]

In this case, the trial court held a hearing, but the only evidence submitted by the parties was in the form of affidavits with accompanying exhibits. Because this hearing fell short of an evidentiary hearing held "in a manner similar to determining the issue at trial,"[7] we conclude that RFD was required only to make a prima facie showing of personal jurisdiction over appellees in order to survive the motion to dismiss.

[6,7] At the hearing, the court indicated to the parties that because it was accepting evidence, it was necessary to change the way the motion to dismiss was treated, and that the motion would now be treated as one for summary judgment. If a motion to dismiss is treated as one for summary judgment, then, under Neb. Rev. Stat. § 25-1332 (Reissue 2008), the movant carries the burden of showing that there is no genuine issue as to any material fact. We note for the sake of clarity that while it is true that under § 6-1112(b)(6) of the rules of pleading, when a matter outside the pleadings is presented by the parties and accepted by the trial court, a defendant's motion to dismiss is to be treated as a motion for summary judgment, in this case, the motion to dismiss was for lack of personal jurisdiction under § 6-1112(b)(2). As noted above, when the issue on a motion to dismiss is personal jurisdiction, affidavits may be submitted without converting the motion into one for summary judgment.[8] Viewed as the motion to dismiss, and not as a motion for summary judgment, RFD was required only to make a prima facie showing of jurisdiction.

## 2. Personal Jurisdiction

In RFD's first assignment of error, it alleges that the court erred in dismissing the complaint, because RFD made a prima

---

[6] See *Horvath v. Nash*, 802 F. Supp. 146 (W.D. Mich. 1992).

[7] *Cutco Industries v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986). See, also, *Kowalski-Schmidt v. CLS Mortg., Inc.*, 981 F. Supp. 105 (E.D.N.Y. 1997).

[8] See *SK Finance SA v. La Plata County, Bd. of Com'rs*, 126 F.3d 1272 (10th Cir. 1997). See, also, *Dairy Farmers of America, Inc. v. Bassett & Walker*, 702 F.3d 472 (8th Cir. 2012).

facie showing that the district court had personal jurisdiction over appellees. RFD argues two theories for finding personal jurisdiction: (1) that appellees voluntarily assented to jurisdiction of the courts in Nebraska by consenting to provisions in the Sunflower Agreement which required arbitration in Omaha and (2) that appellees have sufficient minimum contacts with Nebraska by establishing a long-term relationship with a Nebraska business.

[8,9] Personal jurisdiction is the power of a tribunal to subject and bind a particular entity to its decisions.[9] Before a court can exercise personal jurisdiction over a nonresident defendant, the court must determine, first, whether the long-arm statute is satisfied and, if the long-arm statute is satisfied, second, whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process.[10]

[10] Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 2008), provides that a court may exercise personal jurisdiction over a person "[w]ho has any . . . contact with or maintains any . . . relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States." When a state construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the Due Process Clause, the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process.[11]

[11-13] Due process for personal jurisdiction over a non-resident defendant requires that the plaintiff allege specific acts

---

[9] *Abdouch v. Lopez*, 285 Neb. 718, 829 N.W.2d 662 (2013); *VKGS v. Planet Bingo*, 285 Neb. 599, 828 N.W.2d 168 (2013); *S.L., supra* note 3; *In re Petition of SID No. 1*, 270 Neb. 856, 708 N.W.2d 809 (2006); *Diversified Telecom Servs. v. Clevinger*, 268 Neb. 388, 683 N.W.2d 338 (2004).

[10] *Abdouch, supra* note 9; *VKGS, supra* note 9; *S.L., supra* note 3; *Brunkhardt v. Mountain West Farm Bureau Mut. Ins.*, 269 Neb. 222, 691 N.W.2d 147 (2005); *Kugler Co. v. Growth Products Ltd.*, 265 Neb. 505, 658 N.W.2d 40 (2003).

[11] *Abdouch, supra* note 9; *VKGS, supra* note 9.

by the defendant which establish that the defendant had the necessary minimum contacts before a Nebraska court can exercise jurisdiction over a person.[12] When considering the issue of personal jurisdiction, it is essential in each case that there be some act by which the defendant purposely avails himself or herself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.[13] The benchmark for determining whether the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there.[14]

### (a) Arbitration Clause

RFD first argues that the district court erred in dismissing the complaint for lack of personal jurisdiction because appellees voluntarily assented to jurisdiction of the courts in Nebraska by consenting to provisions in the Sunflower Agreement which required arbitration in Omaha.

We have held that consent to a valid and enforceable choice of forum clause in a contract is sufficient to satisfy due process, waive the requirement of minimum contacts, and submit a nonresident to the jurisdiction of the forum state.[15] RFD asserts that arbitration clauses that provide for a particular forum constitute forum selection clauses. In its brief, RFD cites primarily federal cases suggesting that consent to an arbitration clause necessarily includes an implicit consent to be sued in the same state.[16] We note that those cases generally involve efforts to

---

[12] *Ashby, supra* note 5.

[13] *Clevinger, supra* note 9; *Kugler Co., supra* note 10.

[14] *Abdouch, supra* note 9; *VKGS, supra* note 9; *S.L., supra* note 3.

[15] *McKinney, supra* note 1.

[16] See, *St. Paul Fire and Marine v. Courtney Enterprises*, 270 F.3d 621 (8th Cir. 2001); *Matter of Management Recruiters Intern. and Nebel*, 765 F. Supp. 419 (N.D. Ohio 1991); *Armstrong v. Associates Intern. Holdings Corp.*, 242 Fed. Appx. 955 (5th Cir. 2007).

compel arbitration[17] and that here, RFD never sought to compel arbitration under the Sunflower Agreement.

However, we need not decide whether consent to an arbitration clause can ever subject a party to jurisdiction in the forum state, because we find that in this case, RFD has failed to make a prima facie case that appellees were subject to the arbitration clause at issue. Although RFD need not prove its breach of contract claims at the motion to dismiss stage, in order to subject appellees to jurisdiction in Nebraska, it is necessary to do more than put forward an unsupported allegation.[18]

Appellees were not signatories to the Sunflower Agreement. They also did not expressly assume the agreement when they purchased Sunflower's assets. RFD asserts appellees assumed the contract by performing under its terms. Specifically, RFD states that appellees paid a lower rate per subscriber prior to acquiring Sunflower and that after acquiring Sunflower, appellees paid RFD according to the fee schedule provided in the Sunflower Agreement. However, the evidence in the record does not support this assertion. Attached to RFD's affidavit from Gottsch are invoices showing the rate used to calculate the fees owed by Knology, but the invoice from 2010 suggests that Knology paid the same rate both prior to and after the August 2010 acquisition of Sunflower. We find no other evidence in the record supporting RFD's assertion.

We conclude that the district court did not err in finding RFD had failed to make a prima facie showing that appellees had voluntarily subjected themselves to the jurisdiction of Nebraska courts by consenting to the arbitration clause in the Sunflower Agreement.

### (b) Minimum Contacts

RFD next argues that the district court erred in finding it did not have personal jurisdiction over appellees because the

---

[17] See *Foster v. Device Partners Intern., LLC*, No. C 12-02279(DMR), 2012 WL 6115618 (N.D. Cal. Nov. 21, 2012) (unpublished decision).

[18] See *Socialist Workers Party v. Attorney General of U. S.*, 375 F. Supp. 318 (1974).

long-term business relationship between RFD and appellees created sufficient minimum contacts with this state.

[14] Parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.[19] Mail and telephone communications sent by a defendant into a forum may count toward the minimum contacts that support jurisdiction,[20] but, as we noted in *Kugler Co. v. Growth Products Ltd.*,[21] the existence of a contract with a party in a forum state or the mere use of interstate facilities, such as telephones and mail, does not, in and of itself, provide the necessary contacts for personal jurisdiction. In *Kugler Co.*, we said we would also look at the prior negotiations between the parties and the contemplated consequences of their dealings.[22]

In this case, viewing the evidence in the light most favorable to RFD, appellees paid licensing fees to a party in this state for a product received from another state and distributed as a service to customers in other states. Appellees also occasionally used telephone, e-mail, and mail to discuss and pay invoices from RFD. Although monthly payments were made over the course of at least 2 years, the evidence in the record suggests that the actual business dealings between RFD and appellees were extremely limited; appellees paid to provide services based on terms negotiated by other parties (Sunflower and NCTC). The record suggests that the only direct conversation about contract terms between RFD and appellees consisted of appellees' rejecting RFD's efforts to get appellees to enter into contract negotiations.

Generally, Nebraska courts would be in the best position to apply Nebraska law, as required by the choice of law provision in the Sunflower Agreement. Nonetheless, here, we find that RFD failed to make a prima facie showing that appellees had

---

[19] *Kugler Co., supra* note 10.

[20] *Clevinger, supra* note 9.

[21] *Kugler Co., supra* note 10.

[22] *Id.*

sufficient minimum contacts with this state to subject them to the jurisdiction of our courts. The district court did not err in dismissing the complaint for lack of personal jurisdiction.

### 3. Dismissal With Prejudice

In RFD's second assignment of error, it asserts that the district court erred in dismissing the case with prejudice, thereby preventing RFD from refiling the case in the proper forum. We find the issue to be less cut-and-dried than the briefs of the parties would suggest.

There is no statutory grant of judicial discretion to decide whether to dismiss with or without prejudice on a motion to dismiss for lack of personal jurisdiction.[23] Thus, we find this issue to be a question of law. The Eighth Circuit has said that "a dismissal with prejudice operates as a rejection of the plaintiff's claims on the merits and res judicata precludes further litigation."[24] However, the Full Faith and Credit Clause of the U.S. Constitution requires a court to recognize a judgment from another jurisdiction only if the court rendering the judgment had jurisdiction over the subject matter and parties.[25] Thus, a dismissal for lack of personal jurisdiction, even a dismissal with prejudice, should not prevent RFD from pursuing its claims in an appropriate forum.[26]

On the other hand, a dismissal with prejudice would preclude RFD from filing a second suit with the same claims in a Nebraska court. Under the doctrine of collateral estoppel, the findings in this opinion would have a similar preclusive effective. However, as noted by the Eighth Circuit in *Pohlmann v. Bil-Jax, Inc.*,[27] because personal jurisdiction is

---

[23] See, Neb. Rev. Stat. § 25-601(1) (Reissue 2008); *In re Guardianship of David G.*, 18 Neb. App. 918, 798 N.W.2d 131 (2011). Cf. *United States v. Taylor*, 487 U.S. 326, 108 S. Ct. 2413, 101 L. Ed. 2d 297 (1988).

[24] *Jaramillo v. Burkhart*, 59 F.3d 78, 79 (8th Cir. 1995).

[25] See *Baker v. General Motors Corp.*, 522 U.S. 222, 118 S. Ct. 657, 139 L. Ed. 2d 580 (1998).

[26] See *Deckert v. Wachovia Student Financial Services*, 963 F.2d 816 (5th Cir. 1992).

[27] *Pohlman v. Bil-Jax, Inc.*, 176 F.3d 1110 (8th Cir. 1999).

determined at the time a suit is commenced, it is possible that due to future events, this legal situation could change. Although it seems unlikely under the facts of this case, if, for example, appellees were to relocate to Nebraska, then personal jurisdiction over appellees in a subsequent suit could be proper in this state.

We also note that in this case, both parties agreed in briefs and in arguments before this court that the dismissal should have been without prejudice. For these reasons, we find that the district court erred in dismissing the case with prejudice and its judgment is ordered modified to a dismissal without prejudice.

## VI. CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed as modified.

Affirmed as modified.

Wright, Connolly, and Miller-Lerman, JJ., not participating.

———————

Christopher M. Payne, appellant, v.
Nebraska Department of Correctional
Services et al., appellees.

___ N.W.2d ___

Filed June 13, 2014.    No. S-13-627.

1. **Administrative Law: Judgments: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act, Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 2008, Cum. Supp. 2012 & Supp. 2013), may be reversed, vacated, or modified by an appellate court for errors appearing on the record.

2. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

3. **Constitutional Law: Prisoners: Courts.** The U.S. Constitution guarantees prisoners a right to access the courts.

4. **Prisoners: Courts: Words and Phrases.** Meaningful access to the courts is the capability to bring actions seeking new trials, release from confinement, or vindication of fundamental civil rights.