IN RE APPLICATION OF ABDUL-QADIR GHOWRWAL
FOR WRIT OF HABEAS CORPUS.
ABDUL-QADIR GHOWRWAL, APPELLANT AND
CROSS-APPELLEE, V.
FATIMA L. HUSAIN, APPELLEE AND
CROSS-APPELLANT.

301 N.W.2d 349

Filed January 30, 1981. No. 43216.

C. Russell Mattson of Mattson, Ricketts, Davies, Stewart & Calkins for appellant.

Baylor, Evnen, Curtiss, Grimit & Witt for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

This is an appeal from an order of the District Court granting in part and in part denying relator's petition for a writ of habeas corpus requesting that the respondent be ordered to give physical custody of the parties' minor child to relator. The District Court ordered that the respondent should have legal and

physical custody of the child, and that the relator should have visitation privileges but be required to post a $20,000 bond conditioned on the prompt return of the child as a prerequisite to exercising those visitation rights. The relator appeals and assigns as error that the District Court did not give full faith and credit to a prior judgment of the Ohio Court of Common Pleas; that the District Court found that there had been a change in circumstances since the Ohio order; and that the visitation schedule established by the Nebraska District Court is unreasonable and that the $20,000 bond requirement is excessive. These assignments are without merit. The judgment of the District Court is affirmed in part, and in part reversed with directions.

The parties were married in Indiana in July 1968. The respondent testified that when she first became pregnant with the child whose custody is at issue, relator abused her physically and verbally and stated that he wished the baby would die. She further testified that when she was 6½ months pregnant his abuse forced her to leave him and move home with her parents where the baby was born in August 1970. After the baby was born the relator visited respondent and the baby but refused to take them home with him. Several weeks later respondent went back to relator and lived with him until January 1971 when he went to Afghanistan. Respondent stated that when relator left he sold their belongings, and respondent and the child had to move in with respondent's parents because relator left her no money. Relator returned to the United States in August 1971 and lived with respondent and the child until the divorce in May 1976.

In November 1976 respondent took the child to a psychiatrist who diagnosed the child as being under a great deal of stress and having symptoms of anxiety and regressive behavior. He has been receiving psychiatric care since. The record shows that the child fears that the relator may try to kill the respondent and take him to Afghanistan. The child testified that his fears were

based on statements made to him by the relator. The psychiatric reports and the testimony of the psychiatrist indicate that the child's fear of relator has a substantial and negative effect on the child. During periods when the relator did not visit the child, the child made progress in overcoming his symptoms of anxiety, such as a vocal tic, chewing on his clothes, sucking his fingers, and fighting with other children. After seeing relator, however, he would regress. The child, the psychiatrist, and the respondent stated that the relator has adversely affected the child's attitude toward sexual behavior and physical aggression since the child was 6 years old. Because of the concern expressed by the child's psychiatrist regarding the negative effects of relator's visits on the child, respondent registered the Ohio judgment in Nebraska in February 1977. She also applied for a modification of the decree, requesting termination of relator's visitation rights until the child's emotional condition stabilized. In May of that year relator filed a motion with the Ohio court to find respondent in contempt of court for refusing to allow relator his visitation privileges. In March 1978 the Ohio court found respondent in contempt, and in May 1978 transferred permanent custody of the parties' minor child to the relator. Respondent has retained physical custody of the child since the divorce.

"The general rule is that a judgment of a state court which had jurisdiction has the same credit, validity, and effect in every other court in the United States which it had in the state where it was pronounced." *Miller v. Kingsley*, 194 Neb. 123, 125, 230 N.W.2d 472, 474 (1975). However, "[i]t is the position of this court that when a court's jurisdiction is invoked by a habeas corpus petition seeking custody of a child, the child becomes a ward of the court and the prime consideration is the welfare of the child." *Copple v. Copple*, 186 Neb. 696, 700, 185 N.W.2d 846, 849 (1971). Although the District Court found there had been a significant change in circumstances, in a habeas corpus proceeding the court is not

required to make such a finding. The best interests of the child at the time the inquiry is being made are the primary concern of the state, and former adjudications between parents are evidentiary only, and not controlling. *State ex. rel. Cochrane v. Blanco*, 177 Neb. 149, 128 N.W.2d 615 (1964); *Barnes v. Morash*, 156 Neb. 721, 57 N.W.2d 783 (1953); *Wear v. Wear*, 130 Kan. 205, 285 P. 606 (1930).

"'The welfare of minors is not to be determined by legal technicalities, or by adversary rights as between the parents or other custodians, or by contumacy or other reprehensible conduct of the parents which does not have a direct bearing on the children's welfare.'" *Copple v. Copple, supra* at 699-700, 185 N.W.2d at 849. The record shows that the best interests of this child require that his permanent custody be transferred to respondent. This portion of the District Court's judgment is affirmed.

Respondent filed a cross-appeal with this court assigning as error the following: That the trial court erred by finding that the Ohio court had jurisdiction to modify the custody provisions of the original decree; that the court erred in granting relator temporary custody for the purposes of visitation; and that the court erred in requiring respondent to pay the costs of the action, including $1,000 to be applied as relator's attorney fee, and not allowing respondent an attorney fee from relator. The matter of whether or not the Ohio court retained jurisdiction in this matter is moot. The record shows that in November 1977 respondent submitted to the jurisdiction of the Ohio court, and she will not now be heard to say that the court had no jurisdiction over her.

The record also establishes that any contact with the relator is harmful to the child. The child suffers from emotional and psychological disorders which worsen whenever the child is forced to see the relator. The child's performance in school and his relationships with others manifest the child's psychosis resulting from

visits with the relator. The District Court determined that it was in the best interests of the child to develop a relationship with his father. The evidence indicates otherwise. The psychiatrist's reports show that the child's fears and anxieties are genuine and that time spent with relator is a destructive element in the child's efforts to overcome them. The paramount issue in a habeas corpus proceeding for custody of a child between its natural parents is the best interests of the child. See *Copple v. Copple, supra.* The record in this case clearly shows that allowing relator to have visitation rights is not in the best interests of the child. That portion of the District Court judgment allowing relator visitation rights is reversed.

Respondent's assignment that it was error for the District Court to award relator $1,000 in attorney fees is well taken. "It is the practice in this state to allow recovery of attorneys' fees only in such cases as are provided for by law, or where the uniform course of procedure has been to allow such recovery. As a general rule of practice in this state, attorneys' fees are allowed to the successful party in litigation only where such allowance is provided by statute." *Higgins v. Case Threshing Machine Co.*, 95 Neb. 3, 7, 144 N.W. 1037, 1039 (1914); *Shepard v. Shepard*, 145 Neb. 12, 16, 15 N.W.2d 195, 198 (1944); *Hawkeye Casualty Co. v. Stoker*, 154 Neb. 466, 485, 48 N.W.2d 623, 634 (1951).

There is no statutory authority for awarding attorney fees in a habeas corpus proceeding in this state. Therefore, that portion of the judgment awarding to relator attorney fees is reversed with directions to enter a judgment that each party pay his own attorney fees.

AFFIRMED IN PART, AND IN PART REVERSED WITH DIRECTIONS.