SHARI ERICKSON AND GEORGE ERICKSON, APPELLANTS, V.
U-HAUL INTERNATIONAL, INC., DOING BUSINESS AS
U-HAUL COMPANY, ET AL., APPELLEES.
738 N.W.2d 453

Filed September 7, 2007.    No. S-05-1163.

238

P. Shawn McCann and Mary M. Schott, of Sodoro, Daly & Sodoro, P.C., for appellants.

Ronald F. Krause and Daniel J. Epstein, of Cassem, Tierney, Adams, Gotch & Douglas, for appellees U-Haul International, Inc., and U-Haul Center of N.W. Omaha.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The appellants, Shari Erickson and her husband, George Erickson, sued U-Haul International, Inc., and U-Haul Center of N.W. Omaha (U-Haul Center). The district court granted U-Haul Center's motion for summary judgment, finding that it owed no duty to the Ericksons. The court also sustained U-Haul International's special appearance because the company did not satisfy the minimum contact requirements for the court to have jurisdiction.

This appeal raises two issues. First, whether, absent any special relationship between a lessor of a vehicle and a third party, the lessor has an affirmative duty to protect the third party from injury. Second, whether U-Haul International had sufficient minimum contacts with Nebraska to make it fair and reasonable to exercise general personal jurisdiction over the company. We conclude that (1) a lessor of a chattel has a duty to warn third-party users of the dangerous condition of the chattel and (2) U-Haul International had sufficient contacts to warrant a Nebraska court's exercise of general personal jurisdiction

over it. We reverse, and remand for further proceedings on the Ericksons' claims.

## I. BACKGROUND

### 1. THE CARSTENS' RENTAL OF THE U-HAUL TRUCK

Shari's parents, Dale and Judith Carstens, rented a truck from U-Haul Center to move from Walnut, Iowa, to Herman, Nebraska. The truck, known as a 17-foot easy-loading mover, was licensed in Kentucky.

While operating the truck, Dale attempted to back it up to a porch, but the loading ramp was a few inches short of the top step. Shari held the ramp up while Dale attempted to reverse the truck a few more inches. When the truck was engaged, however, it first jumped forward, throwing Shari off balance, and as Dale backed up the truck, it pinned Shari's foot between the concrete step and the truck's ramp.

In deposition testimony, Shari testified that she did not see any warning labels on the truck instructing that the ramp should not be extended while the truck was in motion. In Judith's deposition, she testified that when she and Dale rented the truck, they did not receive a user's guide with any warnings about using the ramp. After Shari's injury, Judith inspected the truck for warning labels and the only label she found was a partial warning label that was "ragged" and hard to read.

The affidavit of the general manager of U-Haul Center contains a picture that shows a warning sticker below the latch to the truck's rear door stating, "DANGER DO NOT extend or hold ramp while vehicle is in motion. Failure to follow this warning could result in a serious or fatal injury." The affidavit also includes a copy of the "U-Haul Household Moving Van User Instructions," which U-Haul Center alleged that it gives to everyone to whom it rents a truck. On the first page of the instructions is a warning to "**NEVER** put the Household Moving Van in motion while the loading ramp is extended [or] being held."

### 2. U-HAUL INTERNATIONAL'S CONTACTS WITH NEBRASKA

The assistant corporate secretary of U-Haul International in an affidavit, averred that U-Haul International, a Nevada

corporation, has its principal place of business in Phoenix, Arizona; that it did not own the vehicle the Carstens rented; that it was never qualified to do business in Nebraska and did not employ anyone in the state; and that it does not possess any real estate in Nebraska or have a registered agent, maintain any office or bank accounts, conduct any meetings, or perform any kind of services in Nebraska.

U-Haul International, however, is the parent company and owns all of the stock of U-Haul Company of Nebraska (U-Haul Nebraska) and U-Haul Company of Kentucky, which owned the truck involved in the accident. U-Haul Center is a rental center of U-Haul Nebraska. U-Haul International owns the trademark used in Nebraska and displayed on all U-Haul trucks in the state. Also, U-Haul International operates a toll-free telephone number and Web site accessible from Nebraska.

Under the contract it had with U-Haul Nebraska, U-Haul International provided all rental contracts and other forms and stationery for the operation in Nebraska. It was also under contract with U-Haul Nebraska to provide accounting, record-keeping, technical, and advisory services. Finally, it coordinated the exchange of rental equipment between U-Haul Nebraska and other rental centers and prepared all federal and state tax reports.

## II. ASSIGNMENTS OF ERROR

The Ericksons assign that the district court erred in (1) finding there was no duty owed by U-Haul Center to the Ericksons and failing to find a foreseeable risk of injury to rental truck users, (2) holding that no genuine issue of material fact exists and granting summary judgment, (3) denying the Ericksons' motion to amend or alter, (4) granting the special appearance of U-Haul International, and (5) failing to recognize the existence of sufficient minimum contacts between the State of Nebraska and U-Haul International.

## III. STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may

be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[1] In reviewing a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment is granted and give such party the benefit of all reasonable inferences deducible from the evidence.[2]

When a jurisdictional question does not involve a factual dispute, the issue presents a matter of law. We review questions of law independently of the lower court's conclusion.[3]

## IV. ANALYSIS

### 1. OVERVIEW OF DUTY

The district court granted U-Haul Center's motion for summary judgment, finding that U-Haul Center did not owe a duty to Shari. Shari views the matter differently. She contends U-Haul Center owed her a duty because her mother, Judith, rented the truck and her father, Dale, drove it. She argues it was reasonably foreseeable that friends and family would assist Judith and Dale in moving, so a special relationship existed. Shari argues U-Haul Center had a duty to warn of the dangers of using the truck, which extended not just to Judith, who signed the contract, but to all those who used the rental truck.

U-Haul Center counters that for a duty to exist, a relationship must exist between the parties that imposes a legal obligation on one party to protect another party. It argues that because no contractual or special relationship existed between Shari and U-Haul Center, U-Haul Center owed her no duty.

The threshold inquiry in any negligence action is whether the defendant owed the plaintiff a duty.[4] Actionable negligence cannot exist if there is no legal duty to protect the plaintiff from

---

[1] *Glad Tidings v. Nebraska Dist. Council*, 273 Neb. 960, 734 N.W.2d 731 (2007).

[2] *Id.*

[3] See *Rozsnyai v. Svacek*, 272 Neb. 567, 723 N.W.2d 329 (2006).

[4] *Claypool v. Hibberd*, 261 Neb. 818, 626 N.W.2d 539 (2001).

injury.[5] Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular case.[6]

A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.[7] When determining whether a legal duty exists for actionable negligence, a court considers (1) the magnitude of the risk, (2) the relationship of the parties, (3) the nature of the attendant risk, (4) the opportunity and ability to exercise care, (5) the foreseeability of the harm, and (6) the policy interest in the proposed solution.[8]

The duty of reasonable care generally does not extend to third parties absent other facts establishing a duty.[9] The common law has traditionally imposed liability only if the defendant bears some special relationship to the potential victim.[10] Regardless of whether a duty of reasonable care exists, a duty to warn cannot be imposed absent a special relationship.[11]

### (a) Duty to Warn

The Restatement (Second) of Torts addresses the duty of a supplier of chattels:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in

---

[5] *Danler v. Rosen Auto Leasing*, 259 Neb. 130, 609 N.W.2d 27 (2000).

[6] *National Am. Ins. Co. v. Constructors Bonding Co.*, 272 Neb. 169, 719 N.W.2d 297 (2006).

[7] *Danler v. Rosen Auto Leasing, supra* note 5.

[8] *Munstermann v. Alegent Health*, 271 Neb. 834, 716 N.W.2d 73 (2006).

[9] See, *id.*; *Merrick v. Thomas*, 246 Neb. 658, 522 N.W.2d 402 (1994).

[10] *Popple v. Rose*, 254 Neb. 1, 573 N.W.2d 765 (1998).

[11] *Id.*

the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.[12]

Therefore, under § 388 of the Restatement, a supplier has a common-law duty to warn expected users that a chattel may be dangerous. The comments to § 388 show that the term "supplier" includes lessors. And § 407 of the Restatement specifically extends the duties imposed by § 388 to lessors.[13]

This court has adopted and applied § 388 in finding liability against a manufacturer.[14] In *Libbey-Owens Ford Glass Co. v. L & M Paper Co.*,[15] a corporation purchased a forklift, which overheated and caused a fire. The corporation was unaware that the forklift's resistor coil could heat to 1,200 degrees Fahrenheit. The corporation sued the forklift's manufacturer for the damage caused by the fire. We held that the manufacturer acted negligently because it failed to warn the corporation or the distributor about the forklift's heating propensity. We cited § 388 to support our decision.

We have not applied § 388 to a lessor. Other jurisdictions, however, have found that a lessor of chattels owed a duty to

---

[12] Restatement (Second) of Torts § 388 at 300-01 (1965).

[13] *Id.*, § 407, comment *a*.

[14] See *Libbey-Owens Ford Glass Co. v. L & M Paper Co.*, 189 Neb. 792, 205 N.W.2d 523 (1973). See, also, *Driekosen v. Black, Sivalls & Bryson*, 158 Neb. 531, 64 N.W.2d 88 (1954).

[15] *Libbey-Owens Ford Glass Co. v. L & M Paper Co., supra* note 14.

warn of a chattel's dangerous condition.[16] For example, in *Barsness v. General Diesel & Equipment Co.*,[17] a church rented a crane from a construction equipment leasing company. A church member with limited construction experience acted as the general contractor for the project. He attached a manbasket to the crane to lift men for above-ground work. The basket fell while the plaintiff was working in it, and he sustained serious injuries. He sued the leasing company, alleging that the company negligently failed to warn. The trial court granted the leasing company's summary judgment motion.

The North Dakota Supreme Court reversed. It stated that it had recognized a cause of action for failure to warn in cases involving manufacturers. In concluding that a duty may also exist for other suppliers, the court stated: "[W]e see no reason to limit application of the doctrine to manufacturers only. We believe that other suppliers of chattels should be held liable for their negligent failure to warn of dangerous propensities of a chattel supplied to another, as outlined in Section 388."[18] The North Dakota Supreme Court remanded for the trial court to resolve factual issues whether a duty existed.

U-Haul Center contends that Neb. Rev. Stat. § 25-21,239 (Cum. Supp. 2004) has preempted a lessor's liability for leasing a chattel. That statute makes owners of leased trucks, truck-tractors, and trailers liable to persons injured because of the operation of the leased item. Because U-Haul Center does not own the truck that the Carstens leased, § 25-21,239 does not

---

[16] See, e.g., *Barsness v. General Diesel & Equipment Co.*, 383 N.W.2d 840 (N.D. 1986); *Rinkleff v. Knox*, 375 N.W.2d 262 (Iowa 1985); *Clark v. Rental Equipment Co. Inc.*, 300 Minn. 420, 220 N.W.2d 507 (1974); *Parra v. Building Erection Services*, 982 S.W.2d 278 (Mo. App. 1998); *Gall v. McDonald Indus.*, 84 Wash. App. 194, 926 P.2d 934 (1996); *Big Three Welding Equipment Company v. Roberts*, 399 S.W.2d 912 (Tex. Civ. App. 1966). See, also, *Jordan v. Carlisle Constr. Co., Inc.*, No. 8:99CV162, 2001 U.S. Dist. LEXIS 24287 (D. Neb. May 3, 2001) (citing § 388 but finding no duty because the lessees were knowledgeable users).

[17] *Barsness v. General Diesel & Equipment Co.*, *supra* note 16.

[18] *Id.* at 845.

apply. The lack of a statutory duty, however, does not prevent us from recognizing a common-law duty of a supplier to protect foreseeable users of its chattels from dangers known to the supplier.

## (b) Duty to Third Persons

■ Section 388 of the Restatement also makes clear that the duty extends to third persons, not just to those in privity of contract with the supplier of the chattel. Comment *a.* provides in part:

> The words "those whom the supplier should expect to use the chattel" and the words "a person for whose use it is supplied" include not only the person to whom the chattel is turned over by the supplier, but also all those who are members of a class whom the supplier should expect to use it or occupy it or share in its use with the consent of such person, irrespective of whether the supplier has any particular person in mind. Thus, one who lends an automobile to a friend and who fails to disclose a defect of which he himself knows and which he should recognize as making it unreasonably dangerous for use, is subject to liability not only to his friend, but also to anyone whom his friend permits to drive the car or chooses to receive in it as passenger or guest, if it is understood between them that the car may be so used.[19]

In *Gall v. McDonald Indus.*,[20] the Washington Court of Appeals applied § 388 to a third person. There, a construction company leased a dump truck. One of the company's employees was driving the truck when its brakes failed and the truck crashed, injuring the employee. The employee sued the leasing company, and the trial court entered summary judgment against him. In reversing the trial court's decision and remanding the cause, the Washington court cited the comments to § 388. The court held that a rational trier of fact could find that the employee was a foreseeable user of the truck, protected under § 388.

---

[19] Restatement, *supra* note 12, comment *a.* at 301.

[20] *Gall v. McDonald Indus., supra* note 16.

■ U-Haul Center cites *Danler v. Rosen Auto Leasing*[21] in support of its argument that it owes no common-law duty to Shari. In *Danler*, we addressed a vehicle-leasing company's duty to a third-party victim. The lessee, while driving the leased vehicle, damaged a third party's parked car; the third party then sued the leasing company.[22] We determined that "[a] contractual relationship between two parties, one of which is a tort-feasor, does not justify the imposition of an affirmative duty upon the other party to the contract to protect a third-party victim with whom no such relationship exists."[23] That is, without a relationship between the leasing company and the third-party motorist, the leasing company had no affirmative duty to protect the third party.

We, however, believe that the rule in *Danler* does not apply here because a fact finder could determine that Shari was a foreseeable user of the leased goods, unlike the third-party victim in *Danler*. The duty owed by U-Haul Center is not to protect Shari from its lessee's negligence, but to protect her from danger stemming from her own use of the leased truck. She, therefore, could fall within the class of protected individuals under § 388.

### (c) Genuine Issues of Material Fact Exist Regarding Whether U-Haul Center Had a Duty to Warn Shari

Whether a duty exists under § 388 is a question of law, which depends on several factual determinations. In a case involving a lessor of a crane, the North Dakota Supreme Court stated that a fact finder should resolve the following factual issues in deciding whether a duty to warn arose: (1) For what use was the chattel supplied? (2) Was the chattel dangerous or likely to be dangerous for that use? (3) Did the supplier know or have reason to know of the danger? and (4) Did the supplier have no reason to believe that those who would use the chattel would realize its dangerous condition?[24] The duty also depends on whether Shari

---

[21] *Danler v. Rosen Auto Leasing, supra* note 5.

[22] *Id.*

[23] *Id.* at 136, 609 N.W.2d at 32.

[24] See *Barsness v. General Diesel & Equipment Co., supra* note 16.

was a person whom U-Haul Center should expect to use the truck or expect to be endangered by using the truck.

Here, there exist general issues of material fact. The record shows that Shari and the Carstens were using the truck for moving—its intended use. U-Haul Center has a regular practice of providing warnings like handbooks and warning labels on the trucks. This implies that the truck was dangerous for its intended use and that U-Haul Center knew of the danger. Nothing in the record suggests that Shari would realize the dangerous condition absent a warning. Further, U-Haul Center could expect that persons other than the lessee would help in the move, and therefore, use the truck.

Viewing the record in the light most favorable to the Ericksons, we conclude that genuine issues of material fact still exist before the trial court can determine whether, as a matter of law, U-Haul Center had a duty to warn Shari. The district court erred in sustaining U-Haul Center's motion for summary judgment.

## 2. NEBRASKA HAS PERSONAL JURISDICTION OVER U-HAUL INTERNATIONAL

The Ericksons contend the district court erred in not finding that the State of Nebraska has personal jurisdiction over U-Haul International. They argue that U-Haul International had sufficient minimum contacts with Nebraska to establish personal jurisdiction.

### (a) Long-Arm Statute

Before a court can exercise personal jurisdiction over a nonresident defendant, the court must determine, first, whether the state's long-arm statute is satisfied. Second, it must determine whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process.[25] Nebraska's long-arm statute provides: "A court may exercise personal jurisdiction over a person . . . (2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise

---

[25] See *Brunkhardt v. Mountain West Farm Bureau Mut. Ins.*, 269 Neb. 222, 691 N.W.2d 147 (2005). See, also, *Kugler Co. v. Growth Products Ltd.*, 265 Neb. 505, 658 N.W.2d 40 (2003).

of personal jurisdiction consistent with the Constitution of the United States."[26] Nebraska's long-arm statute, therefore, extends Nebraska's jurisdiction over nonresidents having any contact with or maintaining any relation to this state as far as the U.S. Constitution permits.[27] Therefore, the issue is whether U-Haul International had sufficient contacts with Nebraska so that the exercise of personal jurisdiction would not offend federal principles of due process.[28]

### (b) Minimum Contacts

If the long-arm statute has been satisfied, a court must then determine whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process.[29] Therefore, we consider the kind and quality of U-Haul International's activities to decide whether it has the necessary minimum contacts with Nebraska to satisfy due process.[30] To subject an out-of-state defendant to personal jurisdiction in a forum court, due process requires that the defendant have minimum contacts with the forum state so as not to offend traditional notions of fair play and substantial justice.[31] The benchmark for determining if the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there.[32] Whether a forum state court has personal jurisdiction over a nonresident defendant depends on whether

---

[26] Neb. Rev. Stat. § 25-536 (Reissue 1995).

[27] *Brunkhardt v. Mountain West Farm Bureau Mut. Ins., supra* note 25. See, also, *Diversified Telecom Servs. v. Clevinger*, 268 Neb. 388, 683 N.W.2d 338 (2004).

[28] See *Brunkhardt v. Mountain West Farm Bureau Mut. Ins., supra* note 25.

[29] *Id.* See, also, *Quality Pork Internat. v. Rupari Food Servs.*, 267 Neb. 474, 675 N.W.2d 642 (2004).

[30] *Brunkhardt v. Mountain West Farm Bureau Mut. Ins., supra* note 25.

[31] *Id.*

[32] *Id.*

the defendant's actions created substantial connections with the forum state, resulting in the defendant's purposeful availment of the forum state's benefits and protections.[33]

■■■■■ In analyzing personal jurisdiction, we consider the quality and type of the defendant's activities in deciding whether the defendant has the necessary minimum contacts with the forum state to satisfy due process.[34] A court exercises two types of personal jurisdiction depending upon the facts and circumstances of the case: general personal jurisdiction or specific personal jurisdiction. Here, we focus on general personal jurisdiction. To satisfy general personal jurisdiction, the plaintiff's claim does not have to arise directly out of the defendant's contacts with the forum state if the defendant has engaged in " 'continuous and systematic general business contacts' " with the forum state.[35]

In finding sufficient contact in a similar case involving U-Haul International, the Alabama Supreme Court held that Alabama had personal jurisdiction over U-Haul International. In *Boyd v. U-Haul Intern., Inc.*,[36] the plaintiff rented a U-Haul truck and lost control of the truck while backing it up to the doorway of his home.[37] The truck crushed a child's foot against concrete steps, and his foot had to be amputated.[38] The court held that U-Haul International had sufficient minimum contacts with Alabama:

> [W]hile U-Haul International does not own the rented vehicles, it serves as a clearinghouse for U-Haul companies throughout the country. It continually collects monies and distributes percentages of those monies to U-Haul

---

[33] *Id.*

[34] *Id.*

[35] *Id.* See, also, *Quality Pork Internat. v. Rupari Food Servs., supra* note 29, 267 Neb. at 483, 675 N.W.2d at 650, quoting *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

[36] *Boyd v. U-Haul Intern., Inc.*, 527 So. 2d 713 (Ala. 1988).

[37] *Id.*

[38] *Id.*

Company of Alabama. It provides accounting and auditing services to U-Haul Company of Alabama; it provides company forms and stationery; and it maintains standards for repairing and servicing U-Haul vehicles. Moreover, U-Haul International sends its representatives into this State for the express purpose of providing U-Haul Company of Alabama with auditing and accounting services. In light of the foregoing relationship, we conclude that U-Haul International's contacts with Alabama were deliberate rather than fortuitous and, therefore, that it should have been reasonably foreseen that at some time in the future it would need the protections, and would invoke the jurisdiction, of the Alabama courts.[39]

U-Haul International's relationship with U-Haul Company of Alabama looks similar to its relationship with U-Haul Nebraska. U-Haul International contracted with U-Haul Nebraska. The contract not only granted U-Haul Nebraska the exclusive right to have U-Haul rental stores in parts of Nebraska, but also required U-Haul International to provide accounting, record-keeping, technical, and advisory services. The contract required U-Haul International to coordinate the exchange of rental equipment between U-Haul Nebraska and other rental centers. U-Haul International also provided "all rental contracts and other forms and stationery desirable and necessary" for the operations in Nebraska, and prepared all federal and state tax reports. In addition, U-Haul International owns the trademark displayed on all U-Haul trucks used in Nebraska. Finally, U-Haul International operates a toll-free telephone number and Web site accessible from Nebraska. These contacts provide sufficient grounds for a Nebraska court to exercise personal jurisdiction over U-Haul International.

U-Haul International argues that *Boyd* is not binding precedent on this court and that we should instead rely on *Peterson v. U-Haul Co.*[40] In *Peterson*, the Eighth Circuit Court of Appeals found that Nebraska did not have jurisdiction over U-Haul

---

[39] *Id.* at 714.

[40] *Peterson v. U-Haul Co.*, 409 F.2d 1174 (8th Cir. 1969).

Company of North Carolina.[41] Unlike U-Haul Company of North Carolina, however, U-Haul International is not one subsidiary within the U-Haul rental system, but is instead the parent corporation. And U-Haul Company of North Carolina's contacts with Nebraska—which arose primarily when one of its trucks was rented to a destination in Nebraska—were less systematic. In contrast, U-Haul International, as the parent corporation, purposely reached into the state to establish an interdependent contractual relationship with U-Haul Nebraska. This relationship resulted in many contacts between U-Haul International and Nebraska. In *Peterson*, no such contractual arrangement existed between U-Haul Nebraska and U-Haul Company of North Carolina for continuous, systematic contact with Nebraska.

Here, U-Haul International, a Nevada corporation, reached out beyond its borders and negotiated with a Nebraska corporation. This contract established a substantial and continuing relationship between U-Haul International and U-Haul Nebraska and committed U-Haul International to having continuing contacts in Nebraska. We are satisfied that the exercise of jurisdiction over U-Haul International would not offend due process. U-Haul International reached into the State of Nebraska, established sufficient minimum contacts, and invoked the benefits and protections of its laws. The district court, therefore, erred in granting U-Haul International's special appearance.

## V. CONCLUSION

We conclude that genuine issues of material fact exist regarding whether U-Haul Center had a duty to warn Shari. Also, U-Haul International had sufficient contacts with Nebraska to warrant a Nebraska court's exercise of personal jurisdiction over it. We, therefore, reverse the district court's decision regarding both U-Haul Center's motion for summary judgment and U-Haul International's special appearance, and we remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

---

[41] *Id.*