750 N.W.2d 357 (2008)
275 Neb. 872
COUNTY OF HITCHCOCK, Nebraska, a political subdivision of the State of Nebraska, appellant,
v.
William M. BARGER, also known as Bill Barger, et al., appellees.
No. S-07-105.
Supreme Court of Nebraska.
June 13, 2008.
*358 D. Eugene Garner, Hitchcock County Attorney, for appellant.
George G. Vinton, North Platte, for appellees William M. Barger and RanDee L. Barger.
*359 HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.
County of Hitchcock, Nebraska (the County), brought this action to foreclose two tax sale certificates issued for delinquent taxes on real estate owned by William M. Barger and RanDee L. Barger. After the Hitchcock County treasurer issued the certificates to the County, but before the County petitioned for foreclosure, the Bargers filed for chapter 13 bankruptcy. Under 11 U.S.C. § 362(a) (2000), the County was automatically stayed from enforcing its liens when the Bargers filed their bankruptcy petition. Under 11 U.S.C. § 108(c) (2000), the County had 30 days after receiving notice of the bankruptcy dismissal to file its petition in foreclosure. The Bargers argued that the County failed to timely file its petition. The district court agreed and granted the Bargers' motion for summary judgment.
The issue is, When did the County receive notice of the bankruptcy dismissal? The Bargers argue that the County received notice when the bankruptcy court sent notice to the County treasurer in March 2002. The County argues the treasurer was not the proper party to receive notice. The County contends that it did not receive notice until June 2002 when the Hitchcock County Board of Commissioners received a letter from William Barger notifying the board of the bankruptcy dismissal. Because the notice to the treasurer was reasonably calculated to apprise the County that the bankruptcy court had dismissed the Bargers' case, we affirm.

I. BACKGROUND
On July 27, 1998, the County treasurer issued to the County tax sale certificate No. 13-98 for delinquent taxes on real estate owned by the Bargers. This certificate covered property described as the west half of Section 9, Township 4 North, Range 32 West of the 6th P.M., Hitchcock County. On October 1, the treasurer issued to the County tax sale certificate No. 35-98 for delinquent taxes on other real estate the Bargers owned. This certificate covered property described as the northeast quarter of Section 8, Township 4 North, Range 32 West of the 6th P.M., Hitchcock County.
In December 2001, before the County petitioned to foreclose the tax certificates, the Bargers filed for chapter 13 bankruptcy. The U.S. Bankruptcy Court for the District of Nebraska dismissed the bankruptcy case in March 2002. The record reflects that on March 22, the bankruptcy court served a notice of dismissal by first class mail on "Hitchcock County Treasurer, P.O. Box 218, Trenton, NE XXXXX-XXXX." The record also contains William Barger's affidavit. The affidavit states that in "mid-June, 2002," he sent a certified letter to the board of commissioners verifying that the notice of dismissal had been received. The minutes of the July 1, 2002, board of commissioners meeting "acknowledged receipt of a `Notice of Dismissal of Chapter 13 Bankruptcy' from William M. Barger, delivered by certified mail on June 13, 2002."
On July 15, 2002, the County filed its petition to foreclose on tax certificates Nos. 13-98 and 35-98. In their answer, the Bargers alleged that the certificates were void because the County failed to timely file the petition within the timeframe required under Neb.Rev.Stat. § 77-1902 (Reissue 2003), as extended by 11 U.S.C. § 108(c). The Bargers moved for summary judgment, which the district court granted. The County appeals.

*360 II. ASSIGNMENTS OF ERROR
The County assigns, restated and consolidated, that the district court erred in deciding the County's petition was untimely and in sustaining the Bargers' motion for summary judgment.

III. STANDARD OF REVIEW
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[1] In reviewing a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment is granted and give such party the benefit of all reasonable inferences deducible from the evidence.[2]
We review questions of law independently of the lower court's conclusion.[3]

IV. ANALYSIS

1. TIME FOR FILING AN ACTION TO FORECLOSE TAXES UNDER NEBRASKA LAW
Under § 77-1902, an action to foreclose a lien for taxes represented by a tax sale certificate "shall only be brought within six months after the expiration of three years from the date of sale of any real estate for taxes or special assessments." Here, the treasurer issued certificate No. 13-98 to the County on July 27, 1998. The certificate expired on July 27, 2001. Under § 77-1902, the County had until 6 months later, January 27, 2002, to file its foreclosure petition on No. 13-98. The treasurer issued certificate No. 35-98 to the County on October 1, 1998. That certificate expired on October 1, 2001. Applying § 77-1902, the County had 6 months, until April 1, 2002, to file its foreclosure petition on No. 35-98. But the Bargers' filing for bankruptcy affected these time limits.

2. THE BARGERS' FILING FOR BANKRUPTCY EXTENDED THE TIME IN WHICH THE COUNTY HAD TO FILE THE FORECLOSURE PETITIONS
The Bargers filed for bankruptcy in December 2001, triggering the automatic stay under 11 U.S.C. § 362(a). As a result, the County was unable to commence the actions to foreclose the tax liens. The stay continued until the bankruptcy court dismissed the Bargers' case on March 18, 2002. Under § 77-1902, the time for filing the foreclosure petition on No. 13-98 expired on January 27, during the automatic stay. The time for filing the petition on No. 35-98 expired on April 1, about 14 days after the stay terminated.
The bankruptcy code offers protection for claimants whose claims might otherwise expire during the pendency of a bankruptcy stay or before, or within a short time after, the claimant learns of the stay's termination. 11 U.S.C. § 108(c) provides, in relevant part:
Except as provided in section 524 of this title, if applicable nonbankruptcy law. . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of
(1) the end of such period, including any suspension of such period occurring *361 on or after the commencement of the case; or
(2) 30 days after notice of the termination or expiration of the stay under section 362 . . . with respect to such claim.
When § 108(c) applies, "any time deadline for commencing and continuing the action is extended to 30 days after notice of termination of the stay, if the deadline would have occurred on an earlier date."[4] As mentioned, under § 77-1902, the period for filing the petition on No. 13-98 expired on January 27, 2002, before the stay terminated. The period for filing the petition on No. 35-98 expired on April 1, 2002, 14 days after the stay terminated. Therefore, January 27 and April 1 are the relevant dates for § 108(c)(1). Both dates occurred before the deadline described in § 108(c)(2), so the extension in § 108(c)(2) applies. Under § 108(c)(2), the County had 30 days following notice of the stay's termination to file the foreclosure petition for Nos. 13-98 and 35-98. Therefore, in deciding if the County's petition was timely, we must determine when the County received notice of the bankruptcy dismissal.

3. THE COUNTY RECEIVED NOTICE OF THE BANKRUPTCY DISMISSAL IN MARCH 2002

(a) To Trigger the 30-day Limit in § 108(c)(2), Notice Must Be Reasonably Calculated to Apprise the Claimant That the Stay Has Terminated or Expired
The County filed its foreclosure petition on July 15, 2002. The issue is whether July 15 was within 30 days of the County's receiving notice that the bankruptcy court had dismissed the Bargers' bankruptcy. The parties disagree about when the County received that notice. The Bargers contend that the County received notice when the bankruptcy court sent notice of the dismissal to the County treasurer in March. The County contends that it did not receive notice of dismissal when the treasurer received notice because the treasurer was not the proper party to receive the notice. Instead, the County contends that it did not receive notice until it received a letter from William Barger on June 13. Because July 13 fell on a Saturday, the County argues that the petition was timely filed Monday, July 15.
The County relies on Neb.Rev.Stat. § 25-510.02(2) (Reissue 1995) to argue that the proper party to receive notice was the Hitchcock County clerk or chief executive officer. Section 25-510.02(2) provides, "Any county . . . of this state may be served by personal, residence, or certified mail service upon the chief executive officer, or clerk." The County's reliance on this section is misplaced. Section 25-510.02(2) falls within chapter 25, article 5, which is entitled "Commencement of Actions; Process." The statute is relevant for determining how to serve a county when commencing an action involving the countyservice of process. But the County was not served with notice of the bankruptcy dismissal for purposes of commencing an action involving the County. Therefore, § 25-510.02(2) is irrelevant.
The County also argues that the County, acting by and through its board, was the "`holder'" of Nos. 13-98 and 35-98 and was the "`creditor'" for purposes of the bankruptcy proceeding.[5] Thus, according to the County, the board was the proper entity to receive notice of the bankruptcy dismissal, and the board did not receive notice until June 13, 2002.
*362 The Bargers argue that under a due process analysis, the proper standard for determining whether notice to the treasurer put the County on notice is whether that notice was "reasonably calculated" to apprise the County of the bankruptcy dismissal.[6] Generally, due process requires notice "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[7] Although we do not engage in a due process analysis here, we conclude that the "reasonably calculated" standard should apply when deciding whether purported notice is sufficient to trigger the 30-day time limit in § 108(c)(2).
The "reasonably calculated" standard helps further the purpose of § 108(c). Section 108(c) protects claimants by preventing a debtor from strategically filing for bankruptcy to shorten a limitations period and using the expiration of the limitations period as a defense.[8] But once a claimant receives proper notice that the stay has expired or terminated, that party has only 30 days under § 108(c)(2) to commence or continue an action. We believe the protection offered by § 108(c) would be undermined if the 30-day limit could be triggered by something less than notice reasonably calculated to apprise the claimant that the stay had terminated or expired. Therefore, we will consider whether notice to the treasurer was reasonably calculated to apprise the County that the automatic stay had terminated.

(b) Notice to the Treasurer Was Reasonably Calculated to Apprise the County That the Automatic Stay Had Terminated
Another case addressing sufficiency of notice to an entity within a county system is In re Riverchase Apartments, L.P.[9] There, a county argued that it was not bound by the terms of a confirmed reorganization plan because it did not receive notice of the bankruptcy case until after the confirmation. Notice of the events leading up to the confirmation was sent to the county clerk's address. The county argued that the proper address for service of process was that of the county judge or county attorney. The issue was whether notice to the county clerk was reasonably calculated to apprise the county of the pendency of the bankruptcy. The court concluded that it was. According to the court, once the clerk received notice, "delivery to the appropriate person within the County system was the responsibility of the . . . Clerk's Office."[10] The court noted, "`A creditor may chose to organize its business by dividing activities into various departments, [but] it may not use that method of operation as a shield against notice properly sent to the creditor in its name and place of business.'"[11]
We find this reasoning persuasive, given the treasurer's duties regarding tax sale certificates. For instance, the treasurer issues the tax sale certificates.[12] *363 The treasurer also keeps a sale book in which the details of the certificates are recorded.[13] Most important, when the county board is the purchaser, as it was here, the treasurer retains custody of the certificate.[14] And in such cases, the treasurer may assign the certificate to any person wishing to buy the certificate.[15] Clearly, the treasurer has many responsibilities relating to the tax sale certificates.
Here, the bankruptcy dismissal notice was pertinent to the County's foreclosure actions: In effect, the notice announced the termination of the stay that had prevented the County from initiating the foreclosure of its tax sale certificates. We believe it is reasonable to conclude that once the treasurer received the dismissal notice, the treasurer had a responsibility to deliver the notice to the appropriate entity within the county system. Therefore, notice to the treasurer was reasonably calculated to apprise the board that the bankruptcy court had dismissed the case and that the County could initiate its foreclosure action.
In passing, we note that had a party other than the county acquired the tax sale certificates, notice to the treasurer would not have met the "reasonably calculated" standard. The linchpin of our analysis is that the treasurer retained the certificates issued to the County and the relevant parties here are all entities within the county system. It is not unreasonable to expect the treasurer to forward the notice to the proper entity within the county system. Moreover, the treasurer's office was the central clearinghouse for the tax sale certificates.
We conclude that the bankruptcy dismissal notice sent to the treasurer was reasonably calculated to apprise the County that the automatic stay was terminated. Therefore, we find that for purposes of § 108(c)(2), the County received notice of the stay's termination in March 2002, when the bankruptcy court sent the dismissal notice to the treasurer.

4. THE COUNTY'S FORECLOSURE PETITION WAS UNTIMELY
Under § 108(c)(2), the County had 30 days after notice of the automatic stay's termination to file its foreclosure petition. The County received notice in March 2002 but did not file the petition until July 2002. Therefore, the County's foreclosure petition was untimely. Thus, the district court did not err in granting summary judgment for the Bargers and dismissing the County's petition.

V. CONCLUSION
We conclude that notice to the treasurer regarding the bankruptcy dismissal was notice reasonably calculated to apprise the County of the automatic stay's termination. Therefore, for purposes of § 108(c)(2), the County received notice of the stay's termination in March 2002. Under § 108(c)(2), the County had 30 days to file its foreclosure petition, but the County did not file the petition until July 2002. Thus, the County's petition was untimely. The district court did not err in granting the Bargers' motion for summary judgment.
AFFIRMED.
HEAVICAN, C.J., not participating in the decision.
NOTES
[1] Erickson v. U-Haul Internat., 274 Neb. 236, 738 N.W.2d 453 (2007).
[2] Id.
[3] See id.
[4] 2 Collier on Bankruptcy ¶ 108.04 at 108-13 (rev. 15th ed. 2008).
[5] Brief for appellant at 14.
[6] Brief for appellees William Barger and Ran-Dee Barger at 8.
[7] Mullane v. Central Hanover Tr. Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). See, also, In re Estate of Seidler, 241 Neb. 402, 490 N.W.2d 453 (1992).
[8] See National Bank of Commerce v. Ham, 256 Neb. 679, 592 N.W.2d 477 (1999).
[9] In re Riverchase Apartments, L.P., 184 B.R. 35 (Bkrtcy.M.D.Tenn.1993).
[10] Id. at 40.
[11] Id., quoting In re Worthing, 24 B.R. 774 (Bkrtcy.D.Conn.1982).
[12] Neb.Rev.Stat. §§ 77-1809 and 77-1818 (Reissue 2003).
[13] Neb.Rev.Stat. § 77-1812 (Reissue 2003).
[14] § 77-1809.
[15] Id.