766 N.W.2d 94 (2009)
277 Neb. 907
David J. ANDERSON, appellee,
v.
Robert HOUSTON, director, Nebraska Department of Correctional Services, appellant.
No. S-08-954.
Supreme Court of Nebraska.
June 5, 2009.
*96 Jon Bruning, Attorney General, and Ryan C. Gilbride for appellant.
Michael D. Nelson and Cathy R. Saathoff, of Nelson Law, L.L.C., Omaha, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
This habeas corpus proceeding is before us for the second time. David J. Anderson seeks credit for time he spent at liberty after he was mistakenly released from custody before the completion of his criminal sentences. The district court for Douglas County initially granted the relief sought by Anderson. Robert Houston, the director of the Nebraska Department of Correctional Services (the Department), appealed. In Anderson v. Houston (Anderson I),[1] we recognized the equitable doctrine of credit toward a sentence for *97 time spent at liberty following a mistaken release from imprisonment, but determined that additional factual findings were necessary to determine whether Anderson was entitled to such relief. We therefore reversed, and remanded to the district court with instructions to make specific findings. On remand, the court conducted a second evidentiary hearing, made the findings required by our mandate, and again concluded that Anderson was entitled to the relief he sought. The district court also awarded Anderson attorney fees and costs. Houston, on behalf of the Department, perfected this timely appeal. We affirm the determination of the district court that Anderson is entitled to credit against his sentence for the time he spent at liberty, but we reverse the award of attorney fees and costs.

I. BACKGROUND

1. BASIC FACTS
We summarize the basic, undisputed facts which are set forth in more detail in Anderson I. Anderson was convicted in Douglas County District Court of a Class III felony, theft by unlawful taking, and a Class IV felony, theft by unlawful taking. On April 2, 2003, the court sentenced Anderson to 3 to 5 years' imprisonment for the Class III felony and 20 months' to 5 years' imprisonment for the Class IV felony. The court ordered the sentences to run concurrently.
On July 8, 2003, the Department mistakenly released Anderson from incarceration. The Department eventually discovered its mistake and, on September 16, filed a motion for capias and notice of hearing in the Douglas County District Court. Anderson did not appear at the hearing scheduled for September 24. That same day, the district court issued an order directing any law enforcement officers to arrest Anderson if they located him. The clerk's office did not issue that warrant for approximately 14 months.
In the interim, however, Douglas County filed a motion for declaration of forfeiture of Anderson's bail bond because Anderson failed to appear at the September 24, 2003, hearing. This motion, which was filed on March 17, 2004, and an accompanying letter were mailed to Anderson at an address specified in the certificate of service. On March 26, the court entered a default judgment forfeiting Anderson's bond.
On January 3, 2005, a little more than 9 months after the bond forfeiture proceeding, police arrested Anderson during a routine traffic stop. Anderson was then returned to the Nebraska State Penitentiary in Lancaster County. After accounting for the time Anderson was absent from prison, the Department found that his recalculated parole eligibility date was January 9, 2006, and that his new mandatory release date was January 9, 2007. After his reincarceration, Anderson commenced this habeas corpus proceeding and obtained the order which we reviewed in Anderson I.

2. ANDERSON I

In resolving the first appeal, we recognized the equitable principle that a prisoner can be granted credit against a sentence for time during which the prisoner is erroneously at liberty. We also recognized that no equitable relief is required where a prisoner causes his or her own premature release from prison, thwarts governmental attempts at recapture, or misbehaves while at liberty. We held that prisoners who are aware of an erroneous release from confinement but make no effort to correct it are not entitled to equitable relief. Specifically, we stated:
To preserve the right to credit for time spent at liberty, a prisoner who knows his or her release is erroneous *98 must make a reasonable attempt to notify authorities of the mistake. Although the prisoner need not "continue to badger the authorities," a reasonable attempt may well include voicing an objection at the time of release or contacting authorities a short time later in order to clarify his or her status.[2]
We further held that the prisoner "carries the burden to show that the complexity in calculating his or her release date, or some cognitive deficiency, prevented him or her from realizing the release was premature."[3]
We concluded that although the district court had specifically found that Anderson did not cause his premature release and there was no evidence before us that Anderson had committed any crimes while he was erroneously at liberty, there was an unresolved question as to whether Anderson knew that his release was premature, yet remained silent. Accordingly, we remanded to the district court for a determination of "whether Anderson tried to inform officials of their mistake and, if not, whether Anderson reasonably did not know his sentence was set to expire."[4] We further directed the district court to determine whether Anderson had or should have had notice of the September 24, 2003, hearing on the Department's motion for capias and/or Douglas County's motion to declare a forfeiture of his bond. We also directed the parties to present evidence as to why the arrest warrant for Anderson was not issued immediately after it was authorized by the district judge on September 24, and we noted that the district court should determine whether the delay was "part of an organized and diligent plan to notify, find, and reapprehend Anderson, or was instead the product of misconductnegligent or affirmativeby public officials."[5] Finally, we directed the district court to determine the impact of any delay due to misconduct on the equities of denying Anderson credit for any or all of the 14-month period between the authorization and issuance of the arrest warrant. We wrote that "this equitable analysis should be conducted in a manner consistent with the rationale and policies expressed in this opinion."[6] Accordingly, our mandate reversed the judgment of the district court and remanded the cause for further proceedings.

3. PROCEEDINGS FOLLOWING REMAND

(a) Evidence
Anderson testified in person at the hearing following remand, and his deposition was received in evidence. According to the April 2, 2003, sentencing order, Anderson received credit for 76 days served in custody prior to sentencing. His two Nebraska sentences of 3 to 5 years' imprisonment and 20 months' to 5 years' imprisonment were ordered to run concurrently with each other and with "incarceration ordered in Iowa." The record does not reflect the term of the Iowa sentence. Anderson denied receiving any documents reflecting his Nebraska sentences or Iowa sentence, but he admitted that he was generally aware that he was to serve 3 to 5 years' imprisonment on his Nebraska sentences.
Anderson began serving his Iowa sentence sometime in 2002. In June 2003, he completed his Iowa sentence and was *99 transported from Iowa to the Douglas County Correctional Center (DCCC). On July 8, 2003, after he had been at DCCC for approximately 3 weeks, Anderson was informed by a guard that he would be released if he paid an outstanding $300 fine. In his deposition, Anderson testified that he thought he still had Nebraska prison time remaining, so he asked an officer to verify the information. The officer "called downstairs to booking" and again told Anderson that he would be released if he paid the fine. Anderson further testified in his deposition that he informed the captain on the floor at DCCC that he had been sentenced to 3 to 5 years' imprisonment. The captain took Anderson to his office and showed him a computer entry indicating that only the fine was pending. Anderson paid the fine and was released on July 8.
Anderson's wife testified that when she learned of his impending release in July 2003, she was uncertain whether he had completed his sentence and she called DCCC several times to request verification. Each time, she was told that he would be released upon payment of the $300 fine. During her last call, she was told to "quit calling," so she did.
The correctional officer who processed Anderson's release on July 8, 2003, testified that he found no indication in the records that Anderson informed him that the release was erroneous. He testified that if a prisoner were to question an impending release, he would confirm the prisoner's status before completing the release. However, he admitted that he had no independent recollection of Anderson or the circumstances of his release.
Anderson testified that he did not receive notice of the motion for capias and notice of hearing filed on September 16, 2003, and that he did not reside at the address reflected on the certificate of service. Employees of the clerk of the district court testified that the 14-month delay in issuing the arrest warrant which was authorized on September 24, 2003, was the result of "human error." They acknowledged that Anderson was not responsible for the delay.
Anderson testified that he did not receive notice of the motion to declare a forfeiture of his bond filed on March 17, 2004, and that he did not reside at the address reflected on the certificate of service.

(b) Findings
Although the district court received over objection evidence of certain traffic-related offenses committed by Anderson after his release from incarceration in 2003, it subsequently concluded that it could not consider this evidence under the scope of our mandate in Anderson I.
The district court found that although Anderson was not aware of his actual release date, there was sufficient evidence that he questioned various prison officials in an attempt to clarify his status when told that he would be released in July 2003. The court also found that Anderson had carried his burden of demonstrating the complexity of calculating his original release date. The court further found that due to deficiencies in the notices, there was no evidence that Anderson knew or should have known about either the September 24, 2003, hearing on the motion for capias or the bond forfeiture hearing in March 2004. Finally, the district court found that the delay in the issuance of the arrest warrant was caused by the negligence of the State and that while such negligence did not amount to an affirmative act of misconduct, Anderson should not "bear the brunt of the State's negligence."
*100 Based upon these findings, the district court determined that Anderson was entitled to "day for day credit for the one year, 5 months and 25 days he spent at liberty after he was mistakenly released by the ... Department." The court also awarded Anderson attorney fees and costs.

II. ASSIGNMENTS OF ERROR
The Department assigns that the district court erred in (1) "failing to follow the rationale and policies of the Nebraska Supreme Court on remand," (2) imputing errors committed by Douglas County to the Department and the State of Nebraska, and (3) awarding attorney fees and costs to Anderson.

III. STANDARD OF REVIEW
[1] On appeal of a habeas corpus petition, an appellate court reviews the trial court's factual findings for clear error and its conclusions of law de novo.[7]
[2, 3] The construction of a mandate issued by an appellate court presents a question of law.[8] An appellate court reviews questions of law independently of the lower court's conclusion.[9]

IV. ANALYSIS

1. ISSUES AND FINDINGS ON REMAND
The Department's first assignment of error is very broad. We limit our discussion to the arguments asserted in the Department's brief, and thus consider whether the district court erred either in defining the scope of the remand or in making its factual findings on remand.[10]

(a) Scope
[4] The Department contends that the district court erred in concluding that it could not consider traffic-related offenses committed by Anderson while at liberty under the scope of our mandate in Anderson I. The Department construes the mandate as requiring the district court to conduct "a full-blown evidentiary hearing in order to gather sufficient evidence to determine whether the newly articulated equitable doctrine of sentence credit for time spent at liberty applies."[11]
We do not interpret the scope of the mandate to be so broad. In Anderson I, we specifically noted that there was no "evidence that Anderson committed any crimes while he was erroneously at liberty."[12] We remanded the cause for the trial court to determine only "whether Anderson tried to inform officials of their mistake and, if not, whether Anderson reasonably did not know his sentence was set to expire."[13] While we noted that the "equitable analysis should be conducted in a manner consistent with the rationale and policies expressed in this opinion,"[14] this modifying sentence applied only to the specific issues upon which the remand was based.
[5, 6] Where an appellate court reverses and remands a cause to the district *101 court for a special purpose, on remand, the district court has no power or jurisdiction to do anything except to proceed in accordance with the mandate.[15] A trial court is without power to affect rights and duties outside the scope of the remand from an appellate court.[16] Because the issues on remand did not include Anderson's conduct while at liberty, the district court properly declined to consider the Department's evidence in this regard.

(b) Factual Findings
[7, 8] The Department contends the district court erred in concluding both that Anderson tried to inform officials of their mistake and that Anderson legitimately did not know when his sentence was set to expire. In a habeas corpus action, we review a district court's finding of fact for clear error.[17]
The district court found that after being informed of his imminent release, Anderson "questioned various prison officials in an attempt to clarify the circumstances of his release." Anderson had an officer "call down to make sure" that the release was correct. The court also specifically found that Anderson told a DCCC captain that "he had been sentenced to 3-5 years," and also asked this captain to verify that the release was correct. The court concluded that these attempts to inform authorities the release was a mistake were reasonable and that Anderson thus was entitled to equitable relief. Based upon our review of the record, we conclude that the district court's factual finding that Anderson made a reasonable attempt to inform authorities of their mistake was not clearly erroneous.
We stated in Anderson I that if the district court determined that Anderson did not try to inform officials of a possible mistake regarding his release date, it should determine whether he reasonably did not know that his release was premature. Because we affirm the finding that Anderson actually did inform officials of what he perceived as a possible error regarding his release date, we need not address the question of whether he should have been able to precisely calculate his actual release date. We are satisfied by the record that this was not a case of "informed silence." Whether or not Anderson knew his precise release date, the record establishes that he questioned the July 2003 release and called the matter to the attention of corrections officials in order to clarify his status prior to his release. The district court correctly determined that the error in releasing Anderson prematurely was attributable solely to governmental officials, under the equitable principles established in Anderson I.

2. IMPUTING COUNTY ERRORS TO STATE
[9] In its second assignment of error, the Department argues that the district court erred in imputing errors committed by Douglas County to the Department and the State of Nebraska in conducting the equitable analysis. Notably, this issue was not raised when this case was originally presented to this court.[18] Nor was it raised to the district court after remand. And in any event, resolution of this issue is outside the scope of the remand for the same reason that resolution of the issue of Anderson's conduct while at liberty is outside *102 the scope of the remand. This assignment of error is without merit.

3. ATTORNEY FEES AND COSTS
At the hearing on remand, Anderson's counsel orally moved for an award of attorney fees and was granted leave to file an affidavit and supporting evidence on the issue. Counsel subsequently filed an affidavit and supporting documents, which showed attorney fees and expenses in the amount of $19,178.10. The affidavit did not request fees pursuant to any particular statute, but instead simply noted that the fees and expenses were "fair, reasonable, and necessary with regard to the representation" of Anderson. In its final order, the district court, citing Neb.Rev.Stat. § 29-2819 (Reissue 1995), awarded "Anderson's counsel" $15,342.50 in fees and costs. The Department argues that the award was erroneous.
[10, 11] Section 29-2819 authorizes a court in a habeas corpus action to "make such order as to costs as the case may require." As a general rule, attorney fees and expenses may be recovered in a Nebraska civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.[19] Other jurisdictions apply a similar standard regarding the recovery of fees in habeas corpus actions.[20] Neb.Rev.Stat. § 29-2824 (Reissue 2008) specifies various fees which can be taxed as costs in a habeas corpus proceeding, but there is no provision for an award of attorney fees.[21] No other statute specifically provides for the recovery of attorney fees in a habeas action, nor is there any recognized and accepted uniform course of procedure that allows the recovery of attorney fees in a habeas action.[22]
Anderson argues that he was entitled to counsel at public expense as a matter of due process, in that he was at risk of returning to prison if not successful in this action. He relies upon Carroll v. Moore,[23] holding that due process requires that an indigent defendant in a paternity proceeding be furnished appointed counsel at public expense, and Allen v. Sheriff of Lancaster Cty.,[24] holding that an indigent party facing incarceration for noncompliance with a purge plan in a civil contempt proceeding is entitled to appointed counsel. But the additional incarceration which Anderson faced if unsuccessful in this action was no more than that to which he was sentenced in a criminal proceeding in which he was represented by counsel and afforded due process. The issue in this civil proceeding is whether he should be relieved of a portion of that sentence on equitable grounds stemming from the State's error in releasing him prematurely. On these facts, we do not recognize a constitutional basis for taxation of Anderson's attorney fees as costs, and we conclude that the court erred in doing so. And, although § 29-2819 authorizes an award of costs in a habeas corpus action, Anderson proceeded in forma pauperis throughout this action. He therefore did *103 not pay the costs of this action and is not entitled to recover them.[25]

V. CONCLUSION
For the reasons discussed, we conclude that the district court did not err in granting Anderson credit against his sentence for the 1 year, 5 months, and 25 days he spent at liberty as a result of his erroneous release from incarceration on July 8, 2003. However, we reverse and vacate the award of attorney fees and costs, because there is no legal basis upon which Anderson may recover his attorney fees in this action and he has not paid any costs. For the same reason, we overrule Anderson's motion for attorney fees filed in this court.
AFFIRMED IN PART, AND IN PART REVERSED AND VACATED.
NOTES
[1] Anderson v. Houston, 274 Neb. 916, 744 N.W.2d 410 (2008).
[2] Id. at 931, 744 N.W.2d at 422, quoting United States v. Merritt, 478 F.Supp. 804 (D.D.C. 1979).
[3] Id. at 932, 744 N.W.2d at 423.
[4] Id.
[5] Id. at 933, 744 N.W.2d at 423-24.
[6] Id. at 933, 744 N.W.2d at 424.
[7] Anderson I, supra note 1.
[8] County of Sarpy v. City of Gretna, 276 Neb. 520, 755 N.W.2d 376 (2008); Pennfield Oil Co. v. Winstrom, 276 Neb. 123, 752 N.W.2d 588 (2008).
[9] County of Hitchcock v. Barger, 275 Neb. 872, 750 N.W.2d 357 (2008).
[10] See, Walsh v. State, 276 Neb. 1034, 759 N.W.2d 100 (2009); Malchow v. Doyle, 275 Neb. 530, 748 N.W.2d 28 (2008).
[11] Brief for appellant at 9.
[12] Anderson I, supra note 1, 274 Neb. at 928, 744 N.W.2d at 421.
[13] Id. at 932, 744 N.W.2d at 423.
[14] Id. at 933, 744 N.W.2d at 424.
[15] VanHorn v. Nebraska State Racing Comm., 273 Neb. 737, 732 N.W.2d 651 (2007); State ex rel. Hilt Truck Line v. Jensen, 218 Neb. 591, 357 N.W.2d 455 (1984).
[16] Id.
[17] Anderson I, supra note 1.
[18] See id.
[19] Young v. Midwest Fam. Mut. Ins. Co., 276 Neb. 206, 753 N.W.2d 778 (2008).
[20] See 39A C.J.S. Habeas Corpus § 377 (2003).
[21] See, In re Application of Ghowrwal, 207 Neb. 831, 301 N.W.2d 349 (1981); State v. Konvalin, 181 Neb. 554, 149 N.W.2d 755 (1967).
[22] See id.
[23] Carroll v. Moore, 228 Neb. 561, 423 N.W.2d 757 (1988).
[24] Allen v. Sheriff of Lancaster Cty., 245 Neb. 149, 511 N.W.2d 125 (1994).
[25] See Neb.Rev.Stat. §§ 25-2301 to 25-2309 (Reissue 2008).